**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ILLINOIS TAMALE CO., an Illinois corporation,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 16 C 5387** |
| **EL-GREG, INC., an Illinois corporation,** | ) ) | |
| **Defendant.** | ) ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Illinois Tamale Co., which is known as Iltaco and owns the registered trademark PIZZA PUFFS, among other PUFFS trademarks, has sued El-Greg, Inc. for trademark and trade dress infringement, unfair competition, and false advertising under the Lanham Act and state law. The lawsuit concerns El-Greg's use of the product names "Pizza Pies (Puffs)," "Chili Cheese Puff," and "Veggie Pizza Puff," as well as similarities between the parties' slogans and packaging. Illinois Tamale also has asserted a breach of contract claim, alleging that El-Greg breached a prior settlement agreement in which El-Greg agreed not to use "Pizza Puff" to market, advertise, or identify its goods. Each side has moved for partial summary judgment, focusing on the trademark-related claims as opposed to the breach of contract claim. El-Greg contends that it is entitled to summary judgment on the ground that "pizza puff" is a generic term not subject to trademark protection and that Illinois Tamale has no rights in a "Puffs" family of marks. Illinois Tamale argues that El-Greg cannot establish that "pizza puff" is a generic term; it

also seeks to strike El-Greg's affirmative defense of fair use.  For the following reasons, the Court denies both parties' motions.

## Background

The Court takes the following undisputed facts from the parties' respective Local Rule 56.1 statements and accompanying exhibits.[1]

Illinois Tamale and El-Greg manufacture and sell competing versions of a frozen, hand-held stuffed sandwich or dough pocket filled with meat, cheese, and sauce. Illinois Tamale has been making and selling such products to wholesalers and retailers under the names "Pizza Puff" and / or "Pizza Puffs" since 1976.  Pl.'s Stat. of Material Facts in Supp. of its Mot. for Partial Summ. J. (Pl.'s SOF) ¶ 3.  Illinois Tamale describes its original Pizza Puff product on its website as "Pork Sausage and Mozzarella Cheese with our Home-Style Pizza Sauce Wrapped [in] a Soft Flour Tortilla."  Pl.'s App. in Supp. of Opp'n to Def.'s Summ. J. Mot. (Pl.'s App.), Ex. C, at 3.  Illinois Tamale's slogan is "MAKERS OF THE 'ORIGINAL' PIZZA PUFFS."  Am. Compl., Ex. E.  Although the word "pizza" is disclaimed, Illinois Tamale owns a trademark registration for the PIZZA PUFFS mark.  *See* PIZZA PUFFS, Reg. No. 3,628,959 (May 26, 2009), Am. Compl., Ex. A.  Illinois Tamale contends—and El-Greg does not dispute—that the PIZZA PUFFS trademark has attained "incontestable" registration status by virtue of how long it has been registered and in continuous use.  *See id.*; 15 U.S.C. § 1065.

---

[1] The Court overrules El-Greg's argument that the Court should deny Illinois Tamale's motion on the ground that it failed to timely file a Local Rule 56.1 statement along with its cross-motion for summary judgment.  Counsel for Illinois Tamale has adequately explained that this failure was inadvertent, and El-Greg was not prejudiced by the belated filing.  *See Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011).

El-Greg began manufacturing and selling the "Pizza Pie" in 1989. El-Greg does not dispute that its Pizza Pie was intended to be a copy of Illinois Tamale's Pizza Puffs product. Def.'s Resp. to Pl.'s SOF ¶ 11. The Pizza Pie is described in El-Greg's advertising as "Cooked Pork, Real Mozzarella Cheese, Homemade Pizza Sauce with our blend of fresh spices wrapped in a flaky tortilla pocket." Am. Compl., Ex. F. Both Illinois Tamale and El-Greg have sold their products to Restaurant Depot, apparently a restaurant supply firm, for many years; the products are sold side-by-side. In 2010, El-Greg changed its Pizza Pie label, but only for products sold at Restaurant Depot. El-Greg's Pizza Pie label for Restaurant Depot now refers to the product as "PIZZA PIES<sup>TM</sup> (PUFFS)." *See* Am. Compl., Ex. G-1. El-Greg's modified label has a layout similar to Illinois Tamale's Pizza Puffs label, and it includes the slogan "MAKERS OF THE 'ORIGINAL PUFFS,'" which is strikingly similar to Illinois Tamale's slogan. *Id.* The present lawsuit is based in large part on these facts, which Illinois Tamale contends support its claims of trademark and trade dress infringement, false advertising, unfair competition, and deceptive trade practices.

(remainder of this page intentionally blank)

Illinois Tamale offers the following photographs of the parties' respective Restaurant Depot labels:



Am. Compl., Ex. E.



Am. Compl., Ex. G-1.

Both Illinois Tamale and El-Greg sell more than just Pizza Puffs and Pizza Pies / Pizza Pies (Puffs). While certain of their other products bear little resemblance to the products at issue, others are variations on the same stuffed sandwich / dough pocket theme. Additional stuffed sandwich items produced by Illinois Tamale since it first introduced Pizza Puffs include Sloppy Joe Puffs; Taco Puffs; Gyro Puff; Ham & Cheese Puff; Pepperoni Pizza Puff; Beef Pizza Puff; 4-Cheese Pizza Puff; Ham, Cheese & Jalapeno Puff; BBQ Pulled Pork Puff; Reuben Puff; and Breakfast Puff. *See* Am.

4

Compl., Exs. B-C; Pl.'s SOMF, Exs. A, C, N.  Illinois Tamale owns trademark

registrations for a number of these products, including Taco Puffs and the Gyro Puff.

*See* Am. Compl, Exs. B-C.  As for El-Greg, it sells, in addition to the Pizza Pie / Pizza

Pies (Puffs) product, a similar "Chili Cheese Puff" item.  El-Greg also makes and sells

phyllo dough "Spinach Puff" hors d'oeuvres.  Illinois Tamale alleges that El-Greg's use

of the word "puffs" for its pocket sandwiches not only infringes on its registered PIZZA

PUFFS mark, but also constitutes unfair competition and infringes on Illinois Tamale's

claimed "Puffs" family of marks.

El-Greg has moved for summary judgment on Illinois Tamale's federal trademark

infringement claim (count 1) and for partial summary judgment on all the unfair

competition claims (counts 2, 4, and 5).  Specifically, El-Greg contends (1) that "pizza

puffs" is a generic term not subject to trademark protection, and (2) that Illinois Tamale

cannot establish rights to a "Puffs" family of marks.  Illinois Tamale has cross-moved for

partial summary judgment, arguing that, as a matter of law, El-Greg cannot prove that

"pizza puffs" is a generic term, nor can it establish a fair use defense.

### Discussion

A party is entitled to summary judgment only if it demonstrates that "there is no

genuine dispute as to any material fact and [it] is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On cross-motions for

summary judgment, the Court draws inferences "in favor of the party against whom the

motion under consideration is made."  *Cremation Soc'y of Illinois, Inc. v. Int'l Bhd. of*

*Teamsters Local 727*, 869 F.3d 610, 616 (7th Cir. 2017) (citation omitted).

## A.    Genericness of "pizza puff"

As defined in 15 U.S.C. § 1127, the term trademark "includes any word, name, symbol, or device, or any combination thereof" used by a person "to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127.  The level of protection afforded to any given mark depends on the distinctiveness of that mark. *Mil-Mar Shoe Co. v. Shonac Corp.*, 75 F.3d 1153, 1156 (7th Cir. 1996).  Marks are typically classified into one of the following categories, in order of increasing distinctiveness:  (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  A generic term receives no trademark protection, and a descriptive mark may be protected only if it has acquired distinctiveness, known as "secondary meaning," within the relevant market. *Id.* at 769; *Mil-Mar Shoe Co.*, 75 F.3d at 1156.

A generic term is a word that denotes a kind or type of good, rather than a particular brand of that good. *E.g.*, *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir. 1996); *Mil-Mar Shoe Co.*, 75 F.3d at 1157.  Whereas a protectable mark answers the question "Where do you come from?" a generic term answers the question "What are you?" *Colt Def. LLC v. Bushmaster Firearms, Inc.*, 486 F.3d 701, 705 (1st Cir. 2007) (quoting 2 McCarthy on Trademarks and Unfair Competition § 12:1 (5th ed. 2018)).  If the "primary significance" of a term is to denote a type of good rather than a brand, it has become generic. *Ty Inc. v. Softbelly's Inc.*, 353 F.3d 528, 530 (7th Cir. 2003) (quoting *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 118 (1938)).  The

policy behind disallowing trademark protection for generic terms is neatly summarized as follows:

> To allow a firm to use as a trademark a generic word . . . would make it difficult for competitors to market their own brands of the same product. Imagine being forbidden to describe a Chevrolet as a 'car' or an 'automobile' because Ford or Chrysler or Volvo had trademarked these generic words . . . .

*Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 609 (7th Cir. 1986).

The Seventh Circuit has cautioned, however, that "[t]o determine that a trademark is generic and thus pitch it into the public domain is a fateful step"—one that not only "penalizes the trademark's owner for his success in making the trademark a household name" but also may confuse consumers who still associate the trademark with the owner's brand. *Ty Inc.*, 353 F.3d at 531. For those reasons, a trademarked term ordinarily will not be found to be generic until it has "gone so far toward becoming the exclusive descriptor of the product that sellers of competing brands cannot compete effectively without using the name to designate the product they are selling." *Id.* Types of evidence relevant to a determination of genericness include competitors' use as well as the plaintiff's own use of the term, dictionary definitions, media usage, and consumer surveys, among others. *See* McCarthy, *supra*, § 12:13; *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 301 (7th Cir. 1998). Whether or not a term is generic is a question of fact, but it may be resolved on summary judgment "if the evidence is so one-sided that there can be no doubt about how the question should be answered." *Door Sys., Inc.*, 83 F.3d at 171.

Under the Lanham Act, it is presumed that a registered trademark is not generic, but a defendant in a trademark case may overcome this presumption by providing

evidence to the contrary, thereby leaving the plaintiff with the burden of persuasion on the issue of the trademark's validity. *See Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638-39 (7th Cir. 2001); *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936-37 (7th Cir. 1986); *Hickory Farms, Inc. v. Snackmasters, Inc.*, 500 F. Supp. 2d 789, 793 (N.D. Ill. 2007). In the Ninth Circuit, when an incontestable mark is challenged as generic, the defendant bears the burden of persuasion on that issue. *See Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1135 (9th Cir. 2006). The Seventh Circuit has not clearly decided which party bears the burden of persuasion with respect to the genericness of an incontestable mark. *See TE-TA-MA Truth Foundation—Family of URI, Inc. v. World Church of Creator*, 297 F.3d 662, 665 (7th Cir. 2002) (noting, without commenting on which party bears the ultimate burden of persuasion, that "an incontestable registration is more like a bursting-bubble presumption of non-generic-ness" than an "indomitable presumption" overcome only by strong evidence of actual generic usage of the term). As previously explained in *Hickory Farms, Inc. v. Snackmasters, Inc.*, this Court believes it appropriate to assign the burden of persuasion on genericness to the defendant when it comes to incontestable trademarks. *Hickory Farms, Inc.*, 500 F. Supp. 2d at 793. Moreover, Illinois Tamale and El-Greg agree that El-Greg bears the burden of proving the genericness of "pizza puffs" by a preponderance of the evidence. *See* Def.'s Mem. in Supp. of Mot. for Summ. J. (Def.'s Mem.) at 2; Pl.'s Resp. in Opp'n to Def.'s Mem. in Supp. of Mot. for Summ. J. (Pl.'s Resp.) at 4.

El-Greg contends that "pizza puff" is a generic term used to describe "a type of product comprising pizza filling wrapped in dough." Def.'s Mem. at 5. In support of this

contention, El-Greg presents several different types of evidence, all of which, according to El-Greg, demonstrates that the term "pizza puff" is commonly used to denote a type of good rather than Illinois Tamale's specific brand.  El-Greg's evidence may be broken down into the following categories:

(1) the U.S. Patent and Trademark Office's apparent approval of use of the term to denote a type of good;

(2) manufacturers' and restaurants' use of the term to denote a type of good;

(3) use of the term to denote a type of good in recipes published online;

(4) dictionary definitions;

(5) use of the term to denote a type of good in newspapers and other publications, and;

(6) use of the term to denote a type of good in connection with other products and services.

Specifically, El-Greg's evidence from the U.S. Patent and Trademark Office (USPTO) consists of six trademarks—all of which have been cancelled, expired, or abandoned— that covered goods described as "pizza puffs."  *See* Def.'s App. Vol. I, Exs. 1-6.  El-Greg has also submitted evidence of the use of the term "pizza puff" by two other food product manufacturers and nearly 400 restaurants.  *See* Def.'s App. Vols. II-VII, Exs. 7-402.  Additionally, El-Greg has provided the Court with print-outs of approximately 100 Internet recipes for "pizza puffs," as well as definitions of "pizza puff" from Urban Dictionary, Wiktionary, and other online dictionaries that cite Wiktionary as a source.[2]  *See* Def.'s App. Vol. VIII, Exs. 403-496, 500-503.  El-Greg also points to over 200

---

[2] Such crowd-sourced definitions, which may be edited by anyone, are not admissible evidence, and the Court will not consider them.  *See, e.g.*, *Fleishman v. Cont'l Cas. Co.*, No. 09 C 414, 2011 WL 5866264, at *4 (N.D. Ill. Nov. 22, 2011).

references to "pizza puffs" in news articles and other media; it contends these sources refer to "pizza puffs" as a type of good rather than the name of Illinois Tamale's brand. *See* Def.'s App. Vols. IX-X, Exs. 505-722. Lastly, El-Greg points to just under 90 examples of the term "pizza puff" being used to denote a type of good in a television show and in advertisements for other goods or services. *See* Def.'s App. Vol. XI, Ex. 723-810.

Although El-Greg has produced a large volume of evidence regarding the use of the term "pizza puff," Illinois Tamale contends that much of it is irrelevant to the specific question at hand. First, Illinois Tamale argues that it does not compete with restaurants because it sells Pizza Puffs only to wholesalers and retailers. It therefore contends that El-Greg's evidence regarding the use of the term "pizza puff" in restaurant menus cannot support a finding of genericness, because it is not evidence of <u>competitors</u>' usage of the term. Illinois Tamale makes a similar argument with respect to the "pizza puffs" recipes. The Court is not persuaded. Illinois Tamale cites no authority for the proposition that a court may not consider the use of a term by persons or entities who are not in direct competition with the owner of the trademark where that use contributes to consumers' common understanding of the meaning of the term. In fact, in *Mil-Mar Shoe Co. v. Shonac Corp.*, the Seventh Circuit concluded that the plaintiff's "Warehouse Shoes" mark was generic in part because of the large number of retail stores (over 8,000 nationally) that used the word "warehouse" in their names. *Mil-Mar Shoe Co.*, 75 F.3d at 1159 ("When consumers hear the word 'warehouse' in the retail context . . . they generally expect goods to be sold in high volume, from a relatively large store, at discount prices. The word 'warehouse' is thus being used generically to denote a

particular type or genus of retail store.").  The court did not limit its analysis of the word "warehouse" to use by other shoe stores in competition with the plaintiff; instead, it considered use of the term by non-competitor retail stores such as Furniture Warehouse, Just Plants Warehouse, Mattress Warehouse, Tire Warehouse, and Warehouse Liquors.  *Id.*

Illinois Tamale also argues that  the fact that "pizza puffs" are listed on hundreds of restaurant menus and described in newspaper articles does not mean that consumers understand the term to denote an entire category of food, as opposed to Illinois Tamale's own brand of stuffed sandwich.  El-Greg concedes that where the menus do not designate the source of the "pizza puff" product or indicate that it is homemade, they could be referring specifically to Illinois Tamale's Pizza Puffs brand.  Similarly, many of the articles that reference pizza puffs do not do so in a way that precludes the possibility that they are referring to the Illinois Tamale's Pizza Puffs, rather than a generic type of product.  *See, e.g.*, Def.'s App. Vol. IX, Exs. 507, 508, 542, 556.  That said, the vast majority of the articles and menus cited make no reference to Illinois Tamale, nor do they otherwise suggest that they are referring to "pizza puffs" as a brand rather than a type of food product.  As for the "pizza puffs" recipes, Illinois Tamale points out that there are also thousands of recipes for a homemade version of Hot Pockets, another specific brand of stuffed sandwich.  Illinois Tamale argues that the existence of such recipes does not necessarily suggest that "Hot Pockets" is a generic term; it might just show that Hot Pockets are a "well-known brand[ ] [that] home cooks want to replicate."  Pl.'s Resp. at 9.

Lastly, Illinois Tamale points out that both Kay's Naturals Veggie Pizza Puffs and

Nutrisystem's Pizza Puffs—the only two "pizza puff" products identified by El-Greg as produced by other manufacturers—appear to relate to crunchy snack items that are substantially different from Illinois Tamale's frozen "Pizza Puffs" product. *See* Def.'s App. Vol. VII, Exs. 401-402. Although many of the "pizza puff" recipes cited by El-Greg are for products that appear similar to Illinois Tamale's Pizza Puffs, other recipes are for pizza-themed foods that bear little resemblance to the Pizza Puffs product at issue. *Compare* Def.'s App. Vol. VIII, Exs. 440, 442, 447 *with id.*, Exs. 418, 425, 437, 464. Illinois Tamale contends that the variation among products described as "pizza puffs" in the recipes shows that consumers do not use the term "pizza puff" to denote any particular type of food product, much less the particular type of product Illinois Tamale sells.

El-Greg argues that it does not matter that the term "pizza puff" is sometimes used to denote products that are distinct from the precise type of product offered by Illinois Tamale because Illinois Tamale's PIZZA PUFFS trademark is not limited to that specific style of product but instead applies to a "broad range of pastry-like products." Def.'s Mem. at 7. As the Ninth Circuit recently explained in the context of a petition for cancellation of a trademark based on genericness, however, the relevant question is whether a term is generic for the "particular type of good" at issue. *Elliott v. Google, Inc.*, 860 F.3d 1151, 1157 (9th Cir. 2017). Indeed, the Lanham Act specifically states that "[a] registered mark shall not be deemed to be the generic name of goods or services solely because such mark is also used as a name of or to identify a unique product or service." 15 U.S.C. § 1064(3). Accordingly, "[i]f the registered mark becomes the generic name for less than all of the goods or services for which it is

registered, a petition to cancel the registration *for only those goods or services* may be filed."  *Id.* (emphasis added).  El-Greg further argues that the use of the term "pizza puff" for items that are not similar to Illinois Tamales' Pizza Puffs does not preclude a finding of genericness.  That much is true, but because El-Greg bears the burden of proving that Illinois Tamale's incontestable trademark PIZZA PUFFS is a generic term, it does little to advance El-Greg's case.

For its part, Illinois Tamale has provided the Court with evidence that a number of similar stuffed sandwich / filled dough pocket products on the market are not named or described as "pizza puffs."  These products include Hot Pockets and Lean Pockets, Hungry-Man Hand-Fulls, Amy's Cheese Pizza in a Pocket Sandwich, J&J Snack Foods' Supreme Stuffers Savory Filled Pockets, and Totino's Pizza Sticks.  Pl.'s App., Ex. E.  Illinois Tamale further notes that El-Greg sold its competing product as "Pizza Pies" for over 20 years before changing its Restaurant Depot label to "Pizza Pies$^{TM}$ (Puffs)" and that El-Greg's Greg Lereno testified during his deposition that the company's use of the word puff in conjunction with that product was "not that important."  Pl.'s App., Ex. H, 50:2-50:5.  Additionally, the USPTO's list of preapproved descriptions of goods and services includes "dough-enrobed foods consisting of a dough-based wrapper with fillings," but does not include the term "pizza puff."  Pl.'s App., Ex. L.  Illinois Tamale also points out that the term "pizza puff" does appear in any dictionaries other than the crowd-sourced ones cited by El-Greg and that definitions of the word "puff" do not encompass Illinois Tamale's stuffed sandwich product.  *See* Pl.'s App., Ex. P (defining "puff" as "a light, flaky pastry," "a light round hollow pastry," "a light pastry case, typically one made of puff pastry, containing a sweet or savoury filling").  Lastly, Illinois Tamale

points to several recent news articles that expressly identify Illinois Tamale as the source of the Pizza Puff brand as additional evidence of the non-generic nature of the term. *See* Pl.'s App., Ex. R.

El-Greg has offered significant evidence of generic use of the term "pizza puff." On the other hand, Illinois Tamale has produced evidence that many competing brands of similar, if not identical, products can and do compete effectively without using the term "pizza puff" to designate the product being sold. *See Ty Inc.*, 353 F.3d at 531. This is not a situation in which it is "difficult to imagine what else a seller would call" such a product. *Hickory Farms, Inc.*, 500 F.Supp.2d at 795. Drawing all reasonable inferences in favor of Illinois Tamale, the Court concludes that Illinois Tamale has produced evidence that would permit a reasonable juror to find that the "Pizza Puffs" mark is not generic. But a reasonable factfinder could just as well conclude from El-Greg's evidence of the widespread use of the term "pizza puff" to denote a type of pizza-flavored dough-based product rather than Illinois Tamale's specific brand that the term has become generic. In short, the evidence is not "so one-sided that there can be no doubt about how the question should be answered." *Door Sys., Inc.*, 83 F.3d at 171. The Court therefore denies both El-Greg's motion for summary judgment and Illinois Tamale's cross-motion for summary judgment on the question of genericness.

## B.    Validity of a "Puffs" family of marks

"[P]ossession of several marks with a common suffix, prefix or syllable can give rise to a protected 'family' of marks; the common element is the family 'surname.'" *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 395 (7th Cir. 1992). The use of a series of similar marks does not by itself establish the existence of a family of marks,

however—"[t]here must be a recognition among the purchasing public that the common characteristic [surname] is indicative of a common origin of the goods." *J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462 (Fed. Cir. 1991). In determining whether the pattern of usage of a family surname is sufficiently indicative of the family's origin, courts consider the use, advertisement, and distinctiveness of the marks. *Id.* at 1463.

A generic or descriptive term cannot serve as the surname for a family of marks unless the term has acquired secondary meaning. *See Spraying Sys. Co.*, 975 F.2d at 395; *Am. Aloe Corp. v. Aloe Creme Labs., Inc.*, 420 F.2d 1248, 1253 (7th Cir. 1970). Put another way, "a descriptive term can serve as a family surname only where there is a strong showing of secondary meaning in the term." *Spraying Sys. Co.*, 975 F.2d at 395. In a trademark infringement action based on a family of marks, the relevant question is whether the plaintiff's claimed family of marks existed at the time the alleged infringer entered the marketplace. *See AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 819 (7th Cir. 2002).

El-Greg contends that the word "Puffs" in the claimed family of marks is merely descriptive of Illinois Tamale's products and that the descriptive nature of the terms "puff" or "puffs" is further demonstrated by significant third-party use of the words to describe a type of food product. *See, e.g.*, Def.'s App. Vol. XI, Ex. 744 ("Cocoa Puffs"), Ex. 793 ("Cheetos Puffs"), Ex. 796 ("Cheese Puffs"), Ex. 799 ("Happy Baby Puffs"). According to El-Greg, Illinois Tamale cannot establish a family of marks because it has failed to make the requisite "strong showing" of secondary meaning for the "Puffs" surname. Specifically, El-Greg argues that Illinois Tamale's consumer survey evidence

cannot support a finding that "Puffs" has secondary meaning because the survey in question is flawed and was conducted long after El-Greg first began using the term "puffs" in its own product names.

In response, Illinois Tamale contends that the USPTO found that the word "puff" in Illinois Tamale's various "Puff" products "has become distinctive of the goods and / or services as evidenced by the ownership of active U.S. Registration No(s). 3628959, 4010781, and 4380545 on the Principal Register for the same mark for sufficiently similar goods and / or services." Pl.'s Resp. at 13-14. This appears to be incorrect. What the USPTO actually said was that the word puff is "highly descriptive"; for that reason, the USPTO said that Illinois Tamale "may add as evidence of acquired distinctiveness a claim that the wording PUFF has acquired distinctiveness based on its active prior registrations." Pl.'s App., Ex. M, at 4. As far as the Court can tell, the language from which Illinois Tamale quotes is merely suggested language for an acquired distinctiveness claim, not a finding by a USPTO examiner. *Id.*

On the other hand, Illinois Tamale began selling Pizza Puffs, Taco Puffs, a Beef Puff, and Sloppy Joe Puffs as early as the mid-1980s. Pl.'s App., Ex. A. It has advertised many of its "Puff" products together on numerous occasions. *Id.*; Pl.'s App., Ex. B. Illinois Tamale contends that the results of a consumer survey designed to simulate the market in 1990—which is when El-Greg claims it first began using the word "puffs" in a product name—provide additional evidence that the "Puff" surname contributes to consumers' recognition of the family's common origins. According to Illinois Tamale's survey expert, 43 percent of consumers surveyed believed that Pizza Puffs and the Taco Puff were from the same or affiliated companies, and 35.5 percent

perceived such a relationship between Pizza Puffs and the Sloppy Joe Puff. Of those

survey respondents who believed Pizza Puffs were from the same company that

produced the Taco Puff or the Sloppy Joe Puff, or an affiliated company, 64.4 percent

said it was because of the existence of "Puff" in the name, the similar name or brand, or

general similarities. Pl.'s App., Ex. U, at 1. From these results, Illinois Tamale's survey

expert concluded that "there is a clear indication that consumers believe there is a

family of marks based on the common 'Puff' element." *Id.* at 2.

Viewing the evidence in the light most favorable to Illinois Tamale and drawing

reasonable inferences in its favor, the Court concludes that Illinois Tamale has

presented sufficient evidence to permit a reasonable factfinder to conclude that it had a

valid family of marks at the time El-Greg entered the market with a "puff" product.

Although El-Greg takes issue with the methodology of the survey as well as its results,

its objections go to the weight of the survey evidence. At the summary judgment stage,

"the judge's function is not . . . to weigh the evidence and determine the truth of the

matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S.

at 249. The Court therefore denies El-Greg's motion for summary judgment regarding

the existence of a family of "Puffs" marks.

**C.     Fair use**

"Fair use" is a defense to a trademark infringement action under the Lanham Act.

*See* 15 U.S.C. § 1115(b)(4). To prevail on a fair use defense, the defendant must show

(1) that it did not use the mark as a trademark; (2) that the mark is descriptive of the

defendant's goods or services, and; (3) that it used the mark "fairly and in good faith."

*Sorensen v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015). "This defense is based on

the principle that no one should be able to appropriate descriptive language through trademark registration." *Packman*, 267 F.3d at 639 (internal quotation marks and citation omitted).

Illinois Tamale contends that El-Greg cannot prove any of the elements of a fair use defense. First, it argues that El-Greg cannot prove it uses "Pizza Pies™ (Puffs)" in a non-trademark way because it is featured prominently on the product label. Illinois Tamale further argues that El-Greg has no evidence that the word puffs is merely descriptive of its product, because it is not a light, fluffy pastry, and El-Greg only uses the word "puffs" on its label for Restaurant Depot, where El-Greg's product competes side-by-side with Illinois Tamales' Pizza Puffs. Lastly, Illinois Tamale contends that El-Greg cannot show that it is using the claimed mark fairly and in good faith. This, Illinois Tamale argues, is not only because El-Greg has been involved in other disputes with Illinois Tamale relating to its use of the word "puffs," but also because the rest of El-Greg's product label—to include the size, layout, depiction of the product, font size and type, and slogan—clearly demonstrates an intent to copy Illinois Tamale's label, which El-Greg admits to having seen prior to creating its own label.

In response, El-Greg notes that the appearance of the trademark designation TM after "Pizza Pies" but before "(Puffs)" demonstrates that it is not using "puffs" as a trademark. El-Greg contends that the TM indicator plainly and prominently identifies "Pizza Pies" as the product name and that its logo, which appears on the label, identifies El-Greg as the source of the product. In *Packman v. Chicago Tribune Co.*, the Seventh Circuit found that the record did not support the plaintiff's argument that the Chicago Tribune used a particular phrase as a trademark because the Tribune's

masthead, which appeared on the front page of the newspaper and related memorabilia, served to identify the source of the products. *Packman*, 267 F.3d at 639-40. Viewing the evidence in the light most favorable to El-Greg, a reasonable jury could conclude that El-Greg's logo, rather than its use of the word "puffs," identifies the source of the product.

Next, El-Greg contends that its use of parentheses around the word "puffs" indicates that "puffs" is, in fact, extra descriptive information about its Pizza Pies product. El-Greg further notes that several examining attorneys for the USPTO have observed that the term "puffs" is descriptive. Pl.'s App., Ex. M, at 4 ("PUFF describes the form of the goods."). El-Greg has presented sufficient evidence to create a genuine dispute of material fact regarding the issue of whether "puffs" is descriptive of its product.

Lastly, El-Greg contends that it added the "puffs" descriptor because Restaurant Depot complained that people were opening the boxes to identify the contents. El-Greg further argues that it designed its label in accordance with Restaurant Depot's requirements. Illinois Tamale counters that El-Greg's Maria Lereno has testified that Restaurant Depot had nothing to do with adding the word "puffs" to the label, but that does not necessarily undermine the assertion that El-Greg made the change to address the problem of customers opening boxes to identify the product.

A defendant's good faith can be judged "only by inquiry into its subjective purpose." *M. B. H. Enters., Inc. v. WOKY, Inc.*, 633 F.2d 50, 54 (7th Cir. 1980). El-Greg's undisputed awareness of Illinois Tamale's "Pizza Puffs" trademark and label is insufficient to prove that El-Greg acted in bad faith. *See Packman*, 267 F.3d at 642.

Moreover, although the similarities between the parties' labels and slogans is striking and could quite possibly be interpreted as evidence of bad faith, the Court must construe the facts and draw reasonable inferences in favor of El-Greg. In light of testimony that El-Greg's decision to add "(Puffs)" after "Pizza Pies" was influenced by its understanding that customers were opening boxes to identify the Pizza Pies product and that Restaurant Depot's labelling requirements influenced the label redesign, the Court concludes that El-Greg has presented sufficient evidence to create a genuine dispute of material fact on this last element of good faith and fair use.

Because it is not the case that no reasonable factfinder could find that the elements for a fair use defense are met, the Court denies Illinois Tamale's cross-motion for summary judgment on the issue of fair use.

## Conclusion

For the foregoing reasons, the Court denies defendant's motion for partial summary judgment [dkt. no. 70] and denies plaintiff's cross-motion for partial summary judgment [dkt. no. 96]. Docket entry 87 is not actually a motion and is therefore terminated as a pending motion. The case is set for a status hearing on April 5, 2018 at 9:30 a.m. for the purpose of setting a trial date and discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  March 29, 2018