# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS TAMALE CO. | ) | |
| an Illinois corporation, | ) | Civil Action No.: 1:16-cv-05387 |
| | ) | |
| Plaintiff, | ) | Judge Matthew F. Kennelly |
| v. | ) | |
| | ) | |
| EL-GREG, INC. | ) | |
| an Illinois corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S CONTESTED PROPOSED JURY INSTRUCTIONS[1]**

---

[1] Defendant El-Greg has submitted its own contested proposed jury instructions, attached as Exhibit D.

# 1. PRELIMINARY INSTRUCTIONS

## 1.01 BACKGROUND

This case involves a dispute between Plaintiff, Illinois Tamale Co. ("ILTACO") and Defendant, El-Greg, Inc. ("El-Greg"). ILTACO and El-Greg are both manufacturers and distributors of frozen foods products, including snacks and entrees, to restaurants, grocery stores, and other food sellers. ILTACO offers a variety of products. ILTACO's "Pizza Puffs" are one of its flagship products. ILTACO has an incontestable federally registered trademark on Pizza Puffs. ILTACO markets itself with the slogan "Makers of the 'Original' Pizza Puffs." In addition to Pizza Puffs, ILTACO makes other products, such as Taco Puffs, Gyro Puff, Ham & Cheese Puff, Pepperoni Pizza Puff, Beef Pizza Puff, 4 Cheese Pizza Puff, Spinach Pizza Puff, Ham, Cheddar Cheese & Jalapeno Puff, Pulled Pork BBQ Puff, Reuben Puff, Buffalo Style Chicken Puff, and Breakfast Puff. ILTACO's Pizza Puffs , as well as its other products with the common element "Puff" or "Puffs" are dough pockets filled with a combination of meats, vegetables, and cheeses. ILTACO contends that each of the aforementioned products' use the common word "puff" or "puffs" constitute a family marks (the "Puff Marks Family").

El-Greg sells competing dough pockets filled with meats, vegetables, and cheeses. For many years, El-Greg sold its competing products with the name "Pizza Pies." In 2002, ILTACO and El-Greg were parties to a trademark infringement lawsuit based on claims related to alleged use of the name "Pizza Puff" on competing products. ILTACO and El-Greg entered into a settlement agreement to resolve this dispute.

Starting in 2011, El-Greg redesigned the label at a store called Restaurant Depot to include the name "Pizza Pie™ (Puff)." El-Greg included on its label the phrase "Makers of the Original Puffs." El-Greg additionally sells products called "Chili Cheese Puff", "Spinach Puff", and "Deluxe Beef Puffs", and ILTACO contends that El-Greg also sells "Veggie Pizza Puffs", which El-Greg denies. ILTACO contends that by using the term "Pizza Pie™ (Puff)" as the name of El-Greg's competing product, El-Greg has violated ILTACO's trademark. ILTACO further contends that El-Greg's use of the word "puff" or "puffs" violates ILTACO's trademark family of products.

Further, ILTACO contends that El-Greg's label at Restaurant Depot infringed ILTACO's trade dress on its label. ILTACO further contends that El-Greg's alleged trademark and trade dress infringement was willful. ILTACO further contends that El-Greg's use of the phrase "Makers of the Original Puffs" is false and misleading. Lastly, ILTACO contends that El-Greg breached the settlement agreement entered into by the parties.

ILTACO brings this lawsuit against El-Greg under the following causes of action: (1) trademark infringement under the Federal Trademark Act, also known as the Lanham Act (15 U.S.C. §§ 1051-1127); (2) trade dress infringement under § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (3) false designation of origin, or false or misleading description or representation of fact under § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (4) unfair competition and deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/1-510/7), (5) unfair competition under Illinois common law, and (6) breach of contract.

El-Greg contends that it is not liable under any of these causes of action. Specifically, El-Greg contends that its use of "Pizza Pie™ (Puff)" is not likely to confuse consumers. El-Greg further contends that the ILTACO's trademark registration for Pizza Puff is invalid because it is generic. El-Greg also contends that it cannot be liable on ILTACO's claims because it has fairly used the word "puffs" and because ILTACO has waited too long to bring its claims. Lastly, El-Greg contends that its use of "Pizza Pie™ (Puff)" is not a breach of the settlement agreement.

Your job as the jury will be to decide whether or not El-Greg has infringed ILTACO's trademark and trade dress, whether El-Greg has falsely or misleadingly described its products, whether El-Greg's actions constitute unfair competition, and whether El-Greg has breached its contract with ILTACO.

**3. TRADEMARK INFRINGEMENT (PIZZA PUFFS)**

### 3.01 TRADEMARK INFRINGEMENT (PIZZA PUFFS MARK)
### TRADEMARK DEFINED

A trademark is a word, symbol, or combination of words or symbols used by a person to identify his product, to distinguish his product from those manufactured or sold by others, and to indicate the source of his product.

Examples of popular trademarks include:

McDonald's former slogan, "I'm lovin' it"

NBC's peacock logo

Nike's swoosh symbol

Capital One's slogan, "What's in your wallet?"

## 3.03 TRADEMARK INFRINGEMENT (PIZZA PUFFS MARK)
## VALIDITY

A valid trademark is a symbol or term that is "distinctive," which means that the symbol or term is capable of distinguishing Plaintiff's product from the products of others. A trademark is valid if it is inherently distinctive or if it has acquired distinctiveness.

ILTACO's Pizza Puffs trademark is registered on the Principal Register of the U.S. Patent and Trademark Office, and therefore, it is presumed valid.[1] The Pizza Puff trademark has therefore attained incontestable status due to its more than 5 years of consecutive use after registration.[2]

El Greg argues that ILTACO's trademark is invalid. To prove that ILTACO's trademark is invalid, El-Greg must overcome the presumption of validity of ILTACO's marks discussed above. To do so, El-Greg must persuade you that ILTACO's mark is invalid.[3]

---

[1] 15 U.S.C. § 1115.

[2] 15 U.S.C. § 1065.

[3] *Hickory Farms, Inc. v. Snackmasters, Inc.*, 500 F. Supp. 2d 789. 793 (N.D. Ill. 2007).

### 3.05 TRADEMARK INFRINGEMENT (PIZZA PUFFS MARK)
### WILLFULNESS

As I indicated at the beginning of trial, ILTACO contends that El-Greg's infringement of its trademark is willful. If you find that El-Greg infringed ILTACO's trademark, you must also determine whether ILTACO has proven that, at the time El-Greg infringed, El-Greg acted willfully.

ILTACO must prove willfulness by a preponderance of the evidence. ILTACO must present evidence that, at the time El-Greg infringed, El-Greg acted willfully. El-Greg acted willfully if it knew that it was infringing ILTACO's trademark or if it acted with indifference to ILTACO's trademark rights.

## 3.06 TRADEMARK INFRINGEMENT (PIZZA PUFFS MARK)
### AFFIRMATIVE DEFENSE #1 - GENERICNESS

El-Greg contends that ILTACO's trademark has become invalid and unenforceable because the term "pizza puffs" has become generic. A generic term is a common or general name whose primary significance to the consuming public is to identify a class of similar products, regardless who makes or sells them.[1] A generic term answers the question "what are you?" while a trademark answers the question "where do you come from?"[2] For example, "cola" is a generic term for a type of soft drink, so it cannot function by itself as a trademark for this type of soft drink. For those reasons, a trademarked term ordinarily will not be found generic until it has "gone so far toward becoming the exclusive descriptor of the product that sellers of competing brands cannot compete effectively without using the name to designate the product they are selling."[3] The consuming public consists of people who may buy or use, or consider buying or using, the product or similar products.[4]

A trademarked term, such as ILTACO's Pizza Puffs trademark, can become generic when it has gone so far toward becoming the exclusive descriptor of the product that sellers of competing brands cannot compete effectively without using the name to designate the product they are selling.[5]

A term may become generic, even if it was originally granted a trademark.[6]

El Greg has the burden to prove by a preponderance of the evidence that the term "pizza puff" has become generic and thereby unenforceable.

---

[1] *Mil-Mar Shoe Co. v. Shonac Corp.*, 75 F.3d 1152, 1157 (7th Cir. 1996).

[2] *Colt Defense LLC v. Bushmaster Firearms, Inc.*, 486 F.3d 701, 705 (1st Cir. 2007.

[3] *Ty Inc. v. Softbelly's Inc.*, 353 F.3d 528, 531 (7th Cir. 2003).

[4] Federal Civil Jury Instructions of the Seventh Circuit, No. 13.5.7.

[5] *Hickory Farms, Inc. v. Snackmasters, Inc.*, 500 F.Supp.2d 789, 793 (N.D. Ill. 2007).

[6] *Park 'N Fly v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 193-94 (1985); 15 U.S.C. §1065(4).

## 3.07 TRADEMARK INFRINGEMENT (PIZZA PUFFS MARK)
## AFFIRMATIVE DEFENSE #2 – FAIR USE

El Greg has also raised the defense of fair use. This defense "is based on the principle that no one should be able to appropriate descriptive language through trademark registration."

To succeed on this defense, El Greg must prove the following three things by a preponderance of the evidence:

1. El Greg's use of "Pizza Pie™ (Puffs)" was not used as a trademark or service mark.
2. The word "Pizza Pie™ (Puff)" is merely descriptive of El-Greg's goods.
3. El Greg's use of "Pizza Pie™ (Puff)" was done fairly and in good faith.[1]

---

[1] *Sorensen v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015).

### 3.08 TRADEMARK INFRINGEMENT (PIZZA PUFFS MARK)
### DAMAGES – INTRODUCTION

If you find that ILTACO has prevailed on any of its claims, you must then consider what amount of damages to award ILTACO. If you find that ILTACO has not prevailed on any of its claims, then you should not consider the issue of damages.

I will now instruct you about the measure of damages for this claim. I may later instruct you on the measure of damages on other claims. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that ILTACO as not met its burden on its claims, or that any of El-Greg's affirmative defenses preclude ILTACO from recovering on any of its claims, then ILTACO is not entitled to damages.

The damages you award must be adequate to compensate ILTACO for the infringement and any other claims that they have established liability on. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put ILTACO in approximately the same financial position that it would have been in had the infringement or other unlawful conduct not occurred.

## 3.09 TRADEMARK INFRINGEMENT (PIZZA PUFFS MARK)
### DAMAGES

In this case, ILTACO contends that it has sustained damages as a result of El-Greg's infringement of its trademark. If you have found that ILTACO has met its burden in proving this claim, you must determine what amount of money to award ILTACO as damages.

Damages consist of the amount of money required to compensate ILTACO for the injury caused by El-Greg's infringement. ILTACO must prove its damages by a preponderance of the evidence.

To recover damages, ILTACO must prove two things by a preponderance of the evidence:

1. El-Greg's infringement caused actual confusion among consumers; and
2. As a result, ILTACO sustained injury.

You may consider the following types of damages:

- Loss of goodwill. Goodwill is consumer recognition or drawing power of a trademark. In determining loss of goodwill, you should compare the value of ILTACO's goodwill before the infringement with the value of ILTACO's goodwill after the infringement.
- Cost of corrective advertising. This is the amount spent by ILTACO to counteract the effects of El-Greg's infringement and the amount necessary to dispel any public confusion that lingers after El-Greg's infringement has stopped[1]

---

[1] Federal Civil Jury Instructions of the Seventh Circuit, No. 13.6.3.

### 3.10 TRADEMARK INFRINGEMENT (PIZZA PUFFS MARK)
### LOST PROFITS

In addition to ILTACO's damages, ILTACO may recover the profits El-Greg gained from the infringement. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting expenses from gross revenue. Gross revenue is all of the money El-Greg received due to its false advertising.

ILTACO is required only to prove El-Greg's gross revenue. El-Greg is required to prove any expenses that it argues should be deducted in determining its profits. If you find that El-Greg has not met its burden in proving what, if any, amounts should be deducted from its gross revenue, then you must award ILTACO El-Greg's full gross revenue derived from the infringement and/or false advertising.

ILTACO is entitled to recover El-Greg's total profits from its use of the trademark, unless El-Greg proves that a portion of the profit is due to factors other than El-Greg's infringement.

**4. TRADEMARK INFRINGEMENT (PUFF MARKS FAMILY)**

## 4.01 TRADEMARK INFRINGEMENT (PUFF MARKS FAMILY)
## NATURE OF THE CLAIM

ILTACO contends that it has trademark rights in a family of trademarks based on the word "puffs" and that El Greg has infringed its rights by selling products called "Spinach Puffs", "Chili Cheese Puffs" and "Deluxe Beef Puffs" as well as "Pizza Pie™ (Puffs)". ILTACO contends that El-Greg sells "Veggie Pizza Puffs", which El-Greg denies.

A family of marks is a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner. Simply using a series of similar marks does not of itself establish the existence of a family.[1] Recognition of the family is achieved when the pattern of usage of the common element is sufficient to be indicative of the origin of the family.[2]

ILTACO contends that El-Greg infringed ILTACO's Puff Marks Family trademark by selling, marketing, and advertising its competing products "Pizza Pie (Puff)", "Spinach Puffs", "Chili Cheese Puffs" and "Deluxe Pizza Puffs". ILTACO contends that El-Greg also sells "Veggie Pizza Puffs", which El-Greg denies.

ILTACO contends that the public is likely to believe that El-Greg's products are in some way affiliated with, or sponsored by, ILTACO. El-Greg denies this claim. El-Greg contends that its labeling of its products with the term "puff" or "puffs" was fair use because it did so to describe the nature of the products that it sold. El-Greg further contends ILTACO has no rights to its Puff Marks family as the terms "puff" and "puffs" are generic and cannot be protected by trademark.

In order to prove that El-Greg has infringed ILTACO's family of marks in the Puff Marks Family, ILTACO must show that El-Greg's use of the salient word "puff" in labeling its products is likely to cause confusion, mistake or deception as to the source, affiliation, connection or association of El-Greg and El-Greg's goods as being with ILTACO, or as to the sponsorship, approval or affiliation of El-Greg by or with ILTACO.[3]

---

[1] *J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462 (Fed. Cir. 1991).

[2] *Id*. at 1473.

[3] *Lettuce Entertain You Enterprises, Inc. v. Leila Sophia AR, LLC*, 703 F.Supp.2d 777, 785 (N.D. Ill. 2010); *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 814 (7th Cir. 2002).

## 4.02 TRADEMARK INFRINGEMENT (PUFF MARKS FAMILY) OWNERSHIP

A valid trademark is a symbol or term that is "distinctive," which means that the symbol or term is capable of distinguishing Plaintiff's product from the products of others. A trademark is valid if it is inherently distinctive or if it has acquired distinctiveness.

Recognition of a family of marks requires a pattern of usage of the common element sufficient to be indicative of the origin of the family.[1] This may be shown through the use, advertisement, and distinctiveness of the marks, including assessment of the contribution of the common feature to the recognition of the marks as of common origin.[2] Recognition of a family of marks requires that there is recognition among the purchasing public that the common characteristic is indicative of a common origin of the goods.[3] A descriptive term is one that conveys an immediate idea of the ingredients, qualities or characteristics of the goods.[4] ILTACO bears the burden of proving by a preponderance of the evidence that it owns the rights to its Puff Marks Family.[5]

In order to establish common law trademark rights in its Puff Marks Family, you must find that ILTACO has satisfied this standard, and that an appropriate segment of the public identifies this mark with ILTACO.[6] In deciding whether this has been shown, you may consider ILTACO's use of the Puff Marks Family, ILTACO's advertisements for the Puff Marks Family, and the distinctiveness of the Puff Marks Family, including the contribution of the common "puff" or "puffs" feature to the recognition of the Puff Marks Family's origin.[7]

---

[1] *AM General Corp. v. DaimlerChrysler Corp.,* 311 F.3d 796, 814 (7th Cir. 2002).

[2] *AM General Corp. v. DaimlerChrysler Corp.,* 311 F.3d 796, 815 (7th Cir. 2002).

[3] *J & J Snack Foods Corp. v. McDonalds, Corp.*, 932 F.2d 1460, 1462 (Fed. Cir. 1991).

[4] *Bristol-Myers Squibb Co. v. McNeil-P.P.C.*, 973 F.2d 1033, 1040 (2d Cir. 1992)

[5] *AM General Corp. v. DaimlerChrysler Corp.,* 311 F.3d 796, 804 (7th Cir. 2002).

[6] *AM General Corp. v. DaimlerChrysler Corp.,* 311 F.3d 796, 814 (7th Cir. 2002).

[7] *AM General Corp. v. DaimlerChrysler Corp.,* 311 F.3d 796, 815 (7th Cir. 2002).

## 4.03 TRADEMARK INFRINGEMENT (PUFF MARKS FAMILY) LIABILITY

If you find that ILTACO had established rights to a family of marks based on the word "puff" or "puffs" prior to the time El-Greg began selling products using the word "puff" or "puffs", you shall then consider ILTACO's claim of infringement.

ILTACO contends that El-Greg infringed ILTACO's Puffs Marks Family. To succeed on this claim, ILTACO must prove by a preponderance of the evidence that El-Greg sold products using any of the names "Pizza Pie™ (Puff)", "Veggie Pizza Puff", "Chili Cheese Puff", "Spinach Puff" or "Deluxe Beef Puffs", and that any of such uses is likely to cause confusion, mistake or deception as to the source, affiliation, connection or association of El-Greg and El-Greg's goods as being from ILTACO, or as to the sponsorship, approval or affiliation of El-Greg by or with ILTACO.

## 4.04 TRADEMARK INFRINGEMENT (PUFFS MARKS FAMILY) WILLFULNESS

As I indicated at the beginning of trial, ILTACO contends that El-Greg's infringement of its Puff Marks Family was willful. If you find that El-Greg infringed ILTACO's Puffs Marks Family, you must also determine whether ILTACO has proven that, at the time El-Greg infringed, El-Greg acted willfully.

ILTACO must prove willfulness by a preponderance of the evidence. ILTACO must present evidence that, at the time of El-Greg's infringement, El-Greg acted willfully. El-Greg acted willfully if it knew that it was infringing ILTACO's Puffs Marks Family or if it acted with indifference to ILTACO's rights to the Puffs Marks Family.

## 4.05 TRADEMARK INFRINGEMENT (PUFF MARKS FAMILY)
## AFFIRMATIVE DEFENSE #1 – GENERICNESS

El Greg contends that ILTACO's family of marks has become unenforceable because the term "puffs" is generic. A generic term is a common or general name whose primary significance to the consuming public is to identify a class of similar products, regardless who makes or sells them. A generic term answers the question "what are you?" while a trademark answers the question "where do you come from?" For example, "cola" is a generic term for a type of soft drink, so it cannot function by itself as a trademark for this type of soft drink. For those reasons, a trademarked term ordinarily will not be found generic until it has "gone so far toward becoming the exclusive descriptor of the product that sellers of competing brands cannot compete effectively without using the name to designate the product they are selling."[1] The consuming public consists of people who may buy or use, or consider buying or using, the product or similar products. A generic term cannot be the basis for a family of marks.

A term, such as "puff" or "puffs" which ILTACO uses in many of its products, becomes generic when it has gone so far toward becoming the exclusive descriptor of the product that sellers of competing brands cannot compete effectively without using the name to designate the product that they are selling.

To establish this affirmative defense, El-Greg must prove by a preponderance of the evidence that ILTACO's "puff" or "puffs" mark is generic.

---

[1] *Ty Inc. v. Softbelly's Inc.*, 353 F.3d 528, 531 (7th Cir. 2003).

**4.06 TRADEMARK INFRINGEMENT (PUFF MARKS FAMILY)**
**AFFIRMATIVE DEFENSE #2 – FAIR USE**

El Greg has raised the defense of fair use. This defense "is based on the principle that no one should be able to appropriate descriptive language through trademark registration."

To succeed on this defense, El Greg must prove, for each of the "Pizza Pie™ (Puff)", "Veggie Pizza Puff", "Chili Cheese Puff", "Spinach Puff" and "Deluxe Beef Puffs" marks, the following three things by a preponderance of the evidence:

1. El Greg did not use the word Puff as a trademark;
2. The Puff mark is merely descriptive of El-Greg's goods; and
3. El Greg only used the Puff mark fairly and in good faith.[1]

---

[1] *Sorensen v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015).

## 4.07 TRADEMARK INFRINGEMENT (PUFF MARKS FAMILY) DAMAGES

In this case, ILTACO contends that it has sustained damages as a result of El-Greg's infringement of its rights in its Puff Marks Family. If you have found that ILTACO has met its burden in proving this claim, you must determine what amount of money to award ILTACO as damages.

Damages consist of the amount of money required to compensate ILTACO for the injury caused by El-Greg's infringement. ILTACO must prove its damages by a preponderance of the evidence.

To recover damages, ILTACO must prove two things by a preponderance of the evidence:

1. El-Greg's infringement caused actual confusion among consumers; and
2. As a result, ILTACO sustained injury.

You may consider the following types of damages:

- Loss of goodwill. Goodwill is consumer recognition or drawing power of a trademark. In determining loss of goodwill, you should compare the value of ILTACO's goodwill before the infringement with the value of ILTACO's goodwill after the infringement.
- Cost of corrective advertising. This is the amount spent by ILTACO to counteract the effects of El-Greg's infringement and the amount necessary to dispel any public confusion that lingers after El-Greg's infringement has stopped. [1]

---

[1] Federal Civil Jury Instructions of the Seventh Circuit, No. 13.6.3.

### 4.08 TRADEMARK INFRINGEMENT (PUFF MARKS FAMILY)
### LOST PROFITS

In addition to ILTACO's damages, ILTACO may recover the profits El-Greg gained from the infringement. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting expenses from gross revenue. Gross revenue is all of the money El-Greg received due to its false advertising.

ILTACO is required only to prove El-Greg's gross revenue. El-Greg is required to prove any expenses that it argues should be deducted in determining its profits. If you find that El-Greg has not met its burden in proving what, if any, amounts should be deducted from its gross revenue, then you must award ILTACO El-Greg's full gross revenue derived from the infringement.

ILTACO is entitled to recover El-Greg's total profits from its use of the "puff" or "puffs" mark, unless El-Greg proves that a portion of the profit is due to factors other than the infringement.

**5. TRADE DRESS INFRINGEMENT**

## 5.03 TRADE DRESS INFRINGEMENT – VALIDITY

A valid trade dress is a product packaging and presentation that is "distinctive," which means that the packaging and overall presentation of the product is capable of distinguishing ILTACO's products from the product of others. A trade dress for a product packaging is valid if it is inherently distinctive or if it has acquired distinctiveness and is nonfunctional. I will explain these terms to you. [1]

An inherently distinctive trade dress is one that consumers would almost automatically recognize as identifying a particular brand or source of the product. To determine whether ILTACO's trade dress is inherently distinctive, you should consider it as a whole. Some of the factors you may consider are:

- Whether the product label or product packaging is a common basic shape or design (which suggests that the trade dress is not inherently distinctive), or instead is an uncommon shape or design (which suggests that the trade dress is inherently distinctive);

- Whether the product label or product packaging is unusual in a particular field (which suggests that the trade dress is inherently distinctive) or instead is common in that field (which suggests that the trade dress is not inherently distinctive);

- Whether the product label or product packaging is a unique feature for that type of product (which suggests that the trade dress is inherently distinctive) or instead is merely a refinement of a commonly decorative feature for that type of product (which suggests that the trade dress is inherently distinctive. [2]

If you find that ILTACO did not prove that its product label or product packaging is inherently distinctive, then you must decide whether the product label is "descriptive" and has "acquired distinctiveness"

A descriptive label directly identifies or describes some characteristic or quality of the product in a straightforward way that requires no imagination or reasoning to understand the meaning of the trade dress. A descriptive trade dress can be valid only if it has "acquired distinctiveness."[3]

Some of the factors you may consider include:

- The amount and manner of advertising, promotion and other publicity of ILTACO's product using the Restaurant Depot label before El Greg began using its Restaurant Depot label;

---

[1] Modified Federal Civil Jury Instructions of the Seventh Circuit, No. 13.1.2.2.
[2] Modified Federal Civil Jury Instructions of the Seventh Circuit, No. 13.1.2.2.2.
[3] Modified Federal Civil Jury Instructions of the Seventh Circuit, No. 13.1.2.2.3.

- The sales volume of ILTACO's product using the Restaurant Depot label before El Greg began using its Restaurant Depot label;

- The length of time ILTACO sold product using the Restaurant Depot label before El Greg began using its Restaurant Depot label. [4]

---

[4] Modified Federal Civil Jury Instructions of the Seventh Circuit, No. 13.1.2.2.4.

## 5.05 TRADE DRESS INFRINGEMENT – WILLFULNESS

As I indicated at the beginning of trial, ILTACO contends that El-Greg's infringement of its trade dress is willful. If you find that El-Greg infringed ILTACO's trade dress, you must also determine whether ILTACO has proven that, at the time of El-Greg's infringement, El-Greg acted willfully.

ILTACO must prove willfulness by a preponderance of the evidence. ILTACO must present evidence that, at the time El-Greg infringed, El-Greg acted willfully. El-Greg acted willfully if it knew that it was infringing ILTACO's trade dress or if it acted with indifference to ILTACO's trade dress rights.

**5.06 TRADE DRESS INFRINGEMENT**
**AFFIRMATIVE DEFENSE #1 – FAIR USE**

If you find that ILTACO has proved all of the three elements, you must consider El Greg's defense of fair use.

To succeed on this defense, El Greg must prove the following three things by a preponderance of the evidence:

1. El Greg's use of the Restaurant Depot label, the photograph, the information panel, and any other identifying characteristics of the infringing products were used in a way other than a trademark manner;

2. El Greg's use of the Restaurant Depot label, including the photograph, information panel, and any other identifying characteristics of the infringing products are merely descriptive of El Greg's products.

3. El Greg only used the Restaurant Depot label design fairly and in good faith.[1]

---

[1] *Sorensen v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015).

## 5.07 TRADE DRESS INFRINGEMENT - DAMAGES

In this case, ILTACO contends that it has sustained damages as a result of El-Greg's infringement of its trade dress. If you have found that ILTACO has met its burden in proving this claim, you must determine what amount of money to award ILTACO as damages.

Damages consist of the amount of money required to compensate ILTACO for the injury caused by El-Greg's infringement. ILTACO must prove its damages by a preponderance of the evidence.

To recover damages, ILTACO must prove two things by a preponderance of the evidence:

1. El-Greg's infringement caused actual confusion among consumers; and
2. As a result, ILTACO sustained injury.

You may consider the following types of damages:

- Loss of goodwill. Goodwill is consumer recognition or drawing power of a trade dress. In determining loss of goodwill, you should compare the value of ILTACO's goodwill before the infringement with the value of ILTACO's goodwill after the infringement.
- Cost of corrective advertising. This is the amount spent by ILTACO to counteract the effects of El-Greg's infringement and the amount necessary to dispel any public confusion that lingers after El-Greg's infringement has stopped.[1]

---

[1] Federal Civil Jury Instructions of the Seventh Circuit, No. 13.6.3.

## 5.08 TRADE DRESS INFRINGEMENT – DAMAGES
## LOST PROFITS

In addition to ILTACO's damages, ILTACO may recover the profits El-Greg gained from the trade dress. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting expenses from gross revenue. Gross revenue is all of the money El-Greg received due to its false advertising.

ILTACO is required only to prove El-Greg's gross revenue. El-Greg is required to prove any expenses that it argues should be deducted in determining its profits. If you find that El-Greg has not met its burden in proving what, if any, amounts should be deducted from its gross revenue, then you must award ILTACO El-Greg's full gross revenue derived from the infringement.

ILTACO is entitled to recover El-Greg's total profits from its use of the trade dress, unless El-Greg proves that a portion of the profit is due to factors other than the infringement.

**6. FALSE DESIGNATION OF ORIGIN**

## 6.01 FALSE DESIGNATION – NATURE OF THE CLAIM

ILTACO contends that El-Greg's use of "Pizza Pie™ (Puff)", "Chili Cheese Puffs", "Spinach Puff", and "Deluxe Beef Puffs" and the accused label has deceived or confused consumers into thinking that El-Greg's products are somehow affiliated with or otherwise endorsed by ILTACO. ILTACO contends that El-Greg also sells "Veggie Pizza Puffs", which El-Greg denies.

El-Greg contends that ILTACO does not have a valid trademark or trade dress in these items, but that they are generic and that ILTACO has no valid trademark rights respecting "Chili Cheese Puffs", "Spinach Puff", or "Deluxe Beef Puffs" because it does not have rights to all product names using the word puffs. El Greg denies that it has sold any product called "Veggie Pizza Puffs". ILTACO contends that El-Greg also sells "Veggie Pizza Puffs", which El-Greg denies. El-Greg also contends that its use of the marks, product design, and packaging constitute fair use under the law as well.

**6.02 FALSE DESIGNATION – LIABILITY**

To prevail on its claim of false designation of origin or false or misleading representation of fact, ILTACO must prove by a preponderance of the evidence that by selling products using any of the names "Pizza Pie™ (Puff)", "Veggie Pizza Puffs", "Chili Cheese Puff", "Spinach Puff", or "Deluxe Beef Puffs", or the accused label, El-Greg's acts are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of El-Greg with ILTACO, or as to the origin, sponsorship, or approval of its goods by ILTACO.

If you find that ILTACO has proven this by a preponderance of the evidence, you must find in favor of ILTACO. If you find that ILTACO has not proven this by a preponderance of the evidence, then you must find in favor of El-Greg.

## 6.03 FALSE DESIGNATION - DAMAGES

In calculating ILTACO's damages, you should determine that sum of money that will put ILTACO in as good a position as it would have been in if El-Greg had not engaged in the false designation of its goods.

In calculating damages, you may consider the following elements:

- Loss of goodwill. Goodwill is consumer recognition or drawing power of a trademark. In determining loss of goodwill, you should compare the value of ILTACO's goodwill before El-Greg's false designation with the value of ILTACO's goodwill after El-Greg's false designation.
- Cost of corrective advertising. This is the amount spent by ILTACO to counteract the effects of El-Greg's deceptive trade practice(s) and the amount necessary to dispel any public confusion that lingers after El-Greg's deceptive trade practice(s) has/have stopped.

**7. FALSE ADVERTISING**

## 7.01 FALSE ADVERTISING – NATURE OF THE CLAIM

ILTACO contends that it has used the slogan "Makers of the 'Original' Pizza Puffs" in advertising its products and on the packaging of the products themselves in order to identify its goods and to distinguish them from the goods of others. ILTACO argues that El-Greg's identification of itself as the "Makers of the Original Puffs" constitutes false advertising in that this representation is literally false. Furthermore, ILTACO contends that use of this phrase on El-Greg's products is misleading in that it is being relied upon by customers to induce purchases of El-Greg's goods under the false understanding that they are ILTACO's goods. El Greg denies ILTACO's claims.

## 7.02 FALSE ADVERTISING – LIABILITY

In order to prevail on its claim of false advertising, ILTACO must prove by a preponderance of the evidence that:

1. El-Greg made a false or misleading statement of fact in a commercial advertisement about the nature, quality, characteristic, or geographic origin of its own product.

A statement is misleading if it conveys a false impression and actually misleads a consumer. A statement can be misleading even if it is literally true or ambiguous.

2. The statement actually deceived or had the tendency to deceive a substantial segment of El-Greg's audience.
3. The deception was likely to influence the purchasing decisions of consumers.
4. El Greg caused the false statement to enter interstate commerce.

A false statement enters interstate commerce in this case if El-Greg's product is transferred, advertised, or sold across state lines or if ILTACO's product is transferred, advertised, or sold across state lines and El-Greg's activities have a substantial effect on ILTACO's business.

5. ILTACO has been or is likely to be injured as a result of the false statement. Injury includes direct diversion of sales from itself to El-Greg and a loss of goodwill associated with its products.

If you find that ILTACO has proven each of these things, then you must find for ILTACO. If, on the other hand, you find that ILTACO has failed to prove any one of these things, then you must find for El-Greg.

## 7.03 FALSE ADVERTISING – DAMAGES

In this case, ILTACO contends that it has sustained damages as a result of El-Greg's false advertising. If you have found that ILTACO has met its burden in proving this claim, you must determine what amount of money to award ILTACO as damages.

Damages consist of the amount of money required to compensate ILTACO for the injury caused by El-Greg's infringement. ILTACO must prove its damages by a preponderance of the evidence.

To recover damages, ILTACO must prove two things by a preponderance of the evidence:

1. El-Greg's false advertising caused actual confusion among consumers; and
2. As a result, ILTACO sustained injury.

You may consider the following types of damages:

- Loss of goodwill. Goodwill is consumer recognition or drawing power of a trademark. In determining loss of goodwill, you should compare the value of ILTACO's goodwill before the false advertising with the value of ILTACO's goodwill after the false advertising.
- Cost of corrective advertising. This is the amount spent by ILTACO to counteract the effects of El-Greg's false advertising and the amount necessary to dispel any public confusion that lingers after El-Greg's false advertising has stopped.[1]

---

[1] Federal Civil Jury Instructions of the Seventh Circuit, No. 13.6.3.

## 7.04 FALSE ADVERTISING – DAMAGES
## LOST PROFITS

In addition to ILTACO's damages, ILTACO may recover the profits El-Greg gained from the false advertising. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting expenses from gross revenue. Gross revenue is all of the money El-Greg received due to its false advertising.

ILTACO is required only to prove El-Greg's gross revenue. El-Greg is required to prove any expenses that it argues should be deducted in determining its profits. If you find that El-Greg has not met its burden in proving what, if any, amounts should be deducted from its gross revenue, then you must award ILTACO El-Greg's full gross revenue derived from the false advertising.

ILTACO is entitled to recover El-Greg's total profits from its false advertising, unless El-Greg proves that a portion of the profit is due to factors other than false advertising.

**8. UNFAIR COMPETITION/DECEPTIVE TRADE PRACTICES**

## 8.01 UNFAIR COMPETITION/DECEPTIVE TRADE PRACTICES
## NATURE OF THE CLAIM

ILTACO contends that El-Greg has engaged in deceptive trade practices in violation of Illinois law in its adoption of the "Pizza Pie™ (Puff)", "Chili Cheese Puff", "Spinach Puff", and "Deluxe Beef Puffs" names, a confusing trade dress for its label, and the "Makers of the Original Puffs" slogan in connection with its products. ILTACO contends that El-Greg also sells "Veggie Pizza Puffs", which El-Greg denies. ILTACO argues that by doing so, El-Greg has obtained the benefit of ILTACO's goodwill and reputation and is likely to cause confusion and deception of the consumer public.

To prevail on its claim of deceptive trade practices, ILTACO will have to prove by a preponderance of the evidence that El-Greg has engaged in any one of many forms of deceptive trade practices in the sale of its goods. Here are some examples;

1. Passing off El-Greg's "Pizza Pie (Puff)", or "Veggie Pizza Puff", "Spinach Puff", "Chili Cheese Puff" or "Deluxe Beef Puffs" products as an ILTACO product;

2. Causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of its goods;

3. Causing a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

4. Using deceptive representations or designations of geographic origin in connection with its goods;

5. Representing that its goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that it has a sponsorship, approval, status, affiliation, or connection that it does not have;

6. Representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

7. Representing that goods are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another;

8. Disparaging the goods, services, or business of another by false or misleading representation of fact;

9. Advertising goods with intent not to sell them as advertised;

10. Advertising goods with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

11. Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

12. Engaging in any other conduct which similarly creates a likelihood of confusion or misunderstanding.[1]

---

[1] 815 ILCS 510/2.

## 8.02 UNFAIR COMPETITION/DECEPTIVE TRADE PRACTICES
## LIABILITY

To prevail on ILTACO's claim of deceptive trade practices, ILTACO must prove by a preponderance of the evidence that El-Greg engaged in any one of the following actions:

1. Passing off El-Greg's "Pizza Pie (Puff)", or "Veggie Pizza Puff", "Chili Cheese Puff", "Spinach Puff", or "Deluxe Beef Puffs" products as an ILTACO product;

2. Causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of its goods;

3. Causing a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

4. Using deceptive representations or designations of geographic origin in connection with its goods;

5. Representing that its goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that it has a sponsorship, approval, status, affiliation, or connection that it does not have;

6. Representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

7. Representing that goods are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another;

8. Disparaging the goods, services, or business of another by false or misleading representation of fact;

9. Advertising goods with intent not to sell them as advertised;

10. Advertising goods with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

11. Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

12. Engaging in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

If you find that El-Greg has not engaged in any of the above practices, you must find in favor of El-Greg.

## 8.03 UNFAIR COMPETITION/DECEPTIVE TRADE PRACTICES DAMAGES

In calculating ILTACO's damages, you should determine that sum of money that will put ILTACO in as good a position as it would have been in if El-Greg had not engaged in its deceptive trade practices.

In calculating damages, you may consider the following elements:

- Loss of goodwill. Goodwill is consumer recognition or drawing power of a trademark. In determining loss of goodwill, you should compare the value of ILTACO's goodwill before El-Greg's deceptive trade practices(s) with the value of ILTACO's goodwill after El-Greg's deceptive trade practice(s).
- Cost of corrective advertising. This is the amount spent by ILTACO to counteract the effects of El-Greg's deceptive trade practice(s) and the amount necessary to dispel any public confusion that lingers after El-Greg's deceptive trade practice(s) has/have stopped.

**9. COMMON LAW TRADEMARK INFRINGEMENT**

## 9.01 COMMON LAW TRADEMARK INFRINGEMENT
## NATURE OF THE CLAIM

ILTACO contends that it has used its Pizza Puffs Mark since as early as 1976, and that because of this longstanding use, the Pizza Puffs Mark has become uniquely associated with ILTACO. ILTACO contends that El-Greg has violated ILTACO's rights in the Pizza Puffs Mark through the sale of its "Pizza Pie™ (Puff)", "Chili Cheese Puff", "Spinach Puff", and "Deluxe Beef Puffs" products. ILTACO contends that El-Greg also sells "Veggie Pizza Puffs", which El-Greg denies. ILTACO further contends that this violation has been willful.

ILTACO further contends that through use of its Pizza Puff Mark, Taco Puffs Mark, Gyro Puff Mark, Reuben Puff Mark, Buffalo Chicken Puff Mark, Bacon Breakfast Puff Mark, Pulled Pork Puff Mark, Spinach & Cheese Pizza Puffs Mark, Ham Breakfast Puff Mark, Sausage Breakfast Puff Mark, Ham, Cheese & Jalapeno Puff Mark, and Ham & Cheese Puff Mark, it has established a family of marks using the salient word "puff" or "puffs." ILTACO further contends that El-Greg has willfully violated this common law trademark through the sale of its confusingly similar "Pizza Pie™ (Puffs)", "Chili Cheese Puff," "Spinach Puff", and "Deluxe Beef Puffs" products.

To prevail on its claim for common law trademark infringement in the PIZZA PUFFS Mark, ILTACO will need to prove by a preponderance of the evidence that El-Greg has violated its common law trademark through its sale of its "Pizza Pie™ (Puffs)", "Chili Cheese Puff", "Veggie Pizza Puff", "Spinach Puff", and "Deluxe Beef Puffs" products.

To prevail on its claim for common law trademark infringement in the Puffs Mark Family, ILTACO will need to prove by a preponderance of the evidence that El-Greg has violated its common law trademark through its sale of these products.

I will explain what specifically ILTACO must prove to you.

## 9.02 COMMON LAW TRADEMARK INFRINGEMENT
## OWNERSHIP OF THE MARK

To establish common law rights to a mark, the party asserting ownership must have won the race to the marketplace to establish exclusive use of the mark. To qualify for trademark rights, the mark must be attached to the product and the use must be continuous and bona fide, not sporadic, casual, and transitory.[1]

In order to establish common law trademark rights in its PIZZA PUFFS mark and family of puffs marks, you must find that ILTACO has satisfied this standard, and that an appropriate segment of the public identifies these marks with ILTACO.

---

[1] *Specht v. Google Inc.*, 758 F.Supp.2d 570, 588 (N.D. Ill. 2010).

## 9.03A COMMON LAW TRADEMARK INFRINGEMENT
## LIABILITY

ILTACO contends that El-Greg infringed ILTACO's trademark "Pizza Puffs". To succeed on this claim, ILTACO must prove the following things by a preponderance of the evidence:

1. ILTACO owns the "Pizza Puffs," mark.
2. ILTACO's "Pizza Puffs," is a valid trademark.
3. El-Greg has used the "Pizza Pie™ (Puff)" term in interstate commerce in a manner that is likely to cause confusion, mistake or deception as to the source, affiliation, connection or association of El-Greg and El Greg's goods with ILTACO, or as to the sponsorship, approval or affiliation of El-Greg by or with ILTACO.

If you find that ILTACO has proven by a preponderance of the evidence each of the foregoing elements, you must find in favor of ILTACO, subject to your consideration of El Greg's statute of limitations defense.

47

## 9.03B COMMON LAW TRADEMARK INFRINGEMENT
## LIABILITY

ILTACO contends that El-Greg infringed ILTACO's family of trademarks. To succeed on this claim, ILTACO must prove the following things by a preponderance of the evidence:

1. That ILTACO owns rights to a family of trademarks using the word "puffs"
2. That a family of trademarks based on the word "puffs" is valid.
3. That El-Greg has used the "Pizza Pie™ (Puff)" term and the terms "Chili Cheese Puffs", "Veggie Pizza Puffs," "Spinach Puff", and "Deluxe Beef Puffs" in interstate commerce in a manner that is likely to cause confusion, mistake or deception as to the source, affiliation, connection or association of El-Greg and El Greg's goods with ILTACO, or as to the sponsorship, approval or affiliation of El-Greg by or with ILTACO.

If you find that ILTACO has proven by a preponderance of the evidence each of the foregoing elements, you must find in favor of ILTACO, subject to your consideration of El Greg's statute of limitations defense.

48

## 9.04 COMMON LAW TRADEMARK INFRINGEMENT
## WILLFULNESS

As I indicated at the beginning of trial, ILTACO contends that El-Greg's infringement of its trademark is willful. If you find that El-Greg infringed ILTACO's trademark, you must also determine whether ILTACO has proven that, at the time El-Greg used the "Pizza Pie™ (Puff)," "Veggie Pizza Puff," "Chili Cheese Puff" and "Deluxe Beef Puffs" terms, El-Greg acted willfully.

ILTACO must prove willfulness by a preponderance of the evidence. ILTACO must present evidence that, at the time El-Greg infringed, El-Greg acted willfully. El-Greg acted willfully if it knew that it was infringing ILTACO's trademark or if it acted with indifference to ILTACO's trademark rights.

49

## 9.05 COMMON LAW TRADEMARK INFRINGEMENT
## AFFIRMATIVE DEFENSE #1 - GENERICNESS

El Greg contends that ILTACO's trademark has become unenforceable because the term "puffs" is generic. A generic term is a common or general name whose primary significance to the consuming public is to identify a class of similar products, regardless who makes or sells them. A generic term answers the question "what are you?" while a trademark answers the question "where do you come from?" For example, "cola" is a generic term for a type of soft drink, so it cannot function by itself as a trademark for this type of soft drink. The consuming public consists of people who may buy or use, or consider buying or using, the product or similar products. A generic term cannot be the basis for a family of marks.

A trademarked term, such as the "puffs" mark which ILTACO uses in many of its products, becomes generic when it has gone so far toward becoming the exclusive descriptor of the product that sellers of competing brands cannot compete effectively without using the name to designate the product that they are selling.

To establish this affirmative defense, El-Greg must prove by a preponderance of the evidence that ILTACO's "puff" or "puffs" mark is generic.

## 9.06 COMMON LAW TRADEMARK INFRINGEMENT
## AFFIRMATIVE DEFENSE #2 – FAIR USE

El Greg has also raised the defense of fair use. This defense "is based on the principle that no one should be able to appropriate descriptive language through trademark registration."

To succeed on this defense, El Greg must prove the following three things by a preponderance of the evidence:

1. El Greg's use of "Pizza Pie™ (Puffs)", "Chili Cheese Puff", "Spinach Puff", and "Deluxe Beef Puffs", and the accused label was not used as a trademark or service mark.
2. The word "Pizza Pie™ (Puffs)", "Chili Cheese Puff", "Spinach Puff", and "Deluxe Beef Puffs", and the accused label is merely descriptive of El-Greg's goods.
3. El Greg's use of "Pizza Pie™ (Puffs)", "Chili Cheese Puff", "Spinach Puff", and "Deluxe Beef Puffs", and the accused label was done fairly and in good faith.[1]

---

[1] *Sorensen v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015).

**9.07 COMMON LAW TRADEMARK INFRINGEMENT**
**AFFIRMATIVE DEFENSE #3 - STATUTE OF LIMITATIONS**

El Greg contends that ILTACO, knew or reasonably should have known of El Greg's labels and product name more than three years before this lawsuit was filed on May 19, 2016. If you find that ILTACO knew or reasonably should have known about the El Greg label and product names prior to May 19, 2013, you must find in favor of El Greg.

### 9.08A TRADEMARK INFRINGEMENT (PIZZA PUFFS MARK)
### DAMAGES

In this case, ILTACO contends that it has sustained damages as a result of El-Greg's infringement of its trademark. If you have found that ILTACO has met its burden in proving this claim, you must determine what amount of money to award ILTACO as damages.

Damages consist of the amount of money required to compensate ILTACO for the injury caused by El-Greg's infringement. ILTACO must prove its damages by a preponderance of the evidence.

To recover damages, ILTACO must prove two things by a preponderance of the evidence:

1. El-Greg's infringement caused actual confusion among consumers; and
2. As a result, ILTACO sustained injury.

You may consider the following types of damages:

- Loss of goodwill. Goodwill is consumer recognition or drawing power of a trademark. In determining loss of goodwill, you should compare the value of ILTACO's goodwill before the infringement with the value of ILTACO's goodwill after the infringement.
- Cost of corrective advertising. This is the amount spent by ILTACO to counteract the effects of El-Greg's infringement and the amount necessary to dispel any public confusion that lingers after El-Greg's infringement has stopped.[1]

---

[1] Federal Civil Jury Instructions of the Seventh Circuit, No. 13.6.3.

## 9.08B TRADEMARK INFRINGEMENT (PIZZA PUFFS MARK)
## DAMAGES

In addition to ILTACO's damages, ILTACO may recover the profits El-Greg gained from the infringement. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting expenses from gross revenue. Gross revenue is all of the money El-Greg received due to its false advertising.

ILTACO is required only to prove El-Greg's gross revenue. El-Greg is required to prove any expenses that it argues should be deducted in determining its profits. If you find that El-Greg has not met its burden in proving what, if any, amounts should be deducted from its gross revenue, then you must award ILTACO El-Greg's full gross revenue derived from the infringement and/or false advertising.

ILTACO is entitled to recover El-Greg's total profits from its use of the trademark, unless El-Greg proves that a portion of the profit is due to factors other than El-Greg's infringement.

## 9.09A TRADEMARK INFRINGEMENT (PUFF MARKS FAMILY) DAMAGES

In this case, ILTACO contends that it has sustained damages as a result of El-Greg's infringement of its rights in its Puff Marks Family. If you have found that ILTACO has met its burden in proving this claim, you must determine what amount of money to award ILTACO as damages.

Damages consist of the amount of money required to compensate ILTACO for the injury caused by El-Greg's infringement. ILTACO must prove its damages by a preponderance of the evidence.

To recover damages, ILTACO must prove two things by a preponderance of the evidence:

1. El-Greg's infringement caused actual confusion among consumers; and
2. As a result, ILTACO sustained injury.

You may consider the following types of damages:

- Loss of goodwill. Goodwill is consumer recognition or drawing power of a trademark. In determining loss of goodwill, you should compare the value of ILTACO's goodwill before the infringement with the value of ILTACO's goodwill after the infringement.
- Cost of corrective advertising. This is the amount spent by ILTACO to counteract the effects of El-Greg's infringement and the amount necessary to dispel any public confusion that lingers after El-Greg's infringement has stopped.[1]

---

[1] Federal Civil Jury Instructions of the Seventh Circuit, No. 13.6.3.

## 9.09B TRADEMARK INFRINGEMENT (PUFF MARKS FAMILY)
## LOST PROFITS

In addition to ILTACO's damages, ILTACO may recover the profits El-Greg gained from the infringement. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting expenses from gross revenue. Gross revenue is all of the money El-Greg received due to its false advertising.

ILTACO is required only to prove El-Greg's gross revenue. El-Greg is required to prove any expenses that it argues should be deducted in determining its profits. If you find that El-Greg has not met its burden in proving what, if any, amounts should be deducted from its gross revenue, then you must award ILTACO El-Greg's full gross revenue derived from the infringement.

ILTACO is entitled to recover El-Greg's total profits from its use of the "puff" or "puffs" mark, unless El-Greg proves that a portion of the profit is due to factors other than the infringement.

## 10. BREACH OF CONTRACT

## 10.04 BREACH OF CONTRACT – DAMAGES CALCULATION

In calculating ILTACO's damages, you should determine that sum of money that will put ILTACO in as good a position as it would have been in if El-Greg had performed its obligations under the contract.

The elements of damages claimed by ILTACO include:

- Lost sales to ILTACO as a result of consumers purchasing El-Greg's infringing products, believing them to be ILTACO products;
- All time and effort expended by ILTACO addressing complaints from customers about El-Greg products which they believed were ILTACO products;
- ILTACO's costs of pursuing this action, including attorney's fees; and
- Any and all sums expended on corrective advertising to differentiate ILTACO's products from those of El-Greg