IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS TAMALE CO., <br>     an Illinois corporation, <br><br>                        Plaintiff, <br> v. <br><br> EL-GREG, INC., <br>     an Illinois corporation, <br><br>                        Defendant. | Civil Action No.: 1:16-cv-05387 <br><br> Judge Matthew F. Kennelly <br><br> Magistrate Judge Susan E. Cox |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A DECLARATION OF EXCEPTIONAL CASE AND FOR ATTORNEY FEES**

Plaintiff, Illinois Tamale, Inc. ("ILTACO"), brought claims, *inter alia*,[1] of: trademark infringement based on Defendant El-Greg, Inc.'s ("El-Greg") use of the name "PIZZA PIE (PUFFS)"; trade dress infringement based on its label used at Restaurant Depot; unfair competition based on its use of "puffs" in stuffed sandwich product names; and false advertising based on use of its literally false slogan "Makers of the Original Puffs". After a four day trial, the jury returned a unanimous verdict in favor of ILTACO on each of these four claims. In addition, the jury found that each of El-Greg's trademark infringement, trade dress infringement, unfair competition, and false advertising was willful. *October 26, 2018 Minute Entry (Dkt. #188)*.

Cases that may be deemed "exceptional" include those "where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1158 (7th Cir. 1994) (emphasis added); *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989) (upholding award of attorney fees where defendant continued to use plaintiff's trademarks after termination of the franchise

---

[1] ILTACO also prevailed on its claim for breach of an earlier settlement agreement.

and licensing agreement). In addition, a Lanham Act case may be deemed exceptional where the non-prevailing party engaged in egregious conduct during the litigation. *TE-TA-MA Truth Foundation-Family of URI, Inc. v. World Church of the Creator*, 392 F.3d 248, 263 (7th Cir. 2004). The Seventh Circuit has made clear that such egregious conduct may justify finding a case exceptional, even without willful infringement. *Id*.

The jury's finding of willfulness, by itself, warrants a declaration that this case is exceptional. In addition, El-Greg's litigation misconduct further supports a finding that this case is exceptional. ILTACO respectfully requests that this Court declare this case exceptional pursuant to 15 U.S.C. § 1117(a), and award ILTACO its reasonable attorney fees expended over the last three years to put an end to El-Greg's willful acts.

**I.     The Jury's Finding Of Willfulness On Each Lanham Act Claim Warrants A Declaration That This Case Is Exceptional**

El-Greg's infringement of ILTACO's PIZZA PUFFS trademark, ILTACO's trade dress, and ILTACO's family of "puffs" marks, and El-Greg's false advertising were all found to be willful by the jury. El-Greg's willful acts of infringement are enough to deem this case exceptional. See *Badger*, 13 F.3d at 1158.

The evidence supporting the jury's finding of willful infringement of the PIZZA PUFFS mark and willful unfair competition related to the "puffs" family of marks is voluminous. El-Greg's Greg Lereno testified that he intended to copy ILTACO's product, and that from the very beginning he knew he could not use the name PIZZA PUFFS because it was trademarked by ILTACO. *Exhibit A, Tr. Trans. 112:5-16*. Some years later, El-Greg was accused of selling or assisting in the sale of El-Greg's copycat stuffed sandwich products as "Pizza Puffs." El-Greg entered into a settlement agreement and agreed it would never use the term "Pizza Puffs" alone or in combination with other words as the name of its product. *Id. at 113:19 – 114:7*. Despite

2

this, in 2010, El-Greg decided to again use the words "pizza" and "puffs" as part of the name of its product in combination with the word "pie" and some parentheses. See *Exhibit B*. El-Greg chose to sell its product as a "PIZZA PIE (PUFFS)" in the only channel of trade where ILTACO's and El-Greg's products were to be sold in side-by-side freezer cases. *Ex. A, Tr. Trans. 115:18 – 116:5; 123:16 – 124:10*. The jury found not only that El-Greg's "PIZZA PIE (PUFFS)" infringed ILTACO's trademark, but that it constituted a breach of the settlement agreement. *Dkt. 188*. Mr. Lereno further testified that several other of ILTACO's stuffed sandwich products with the "puffs" name were sold prior to El-Greg's formation. *Ex. A, Tr. Trans. 194:2 – 195:11*. Similarly, despite the settlement agreement, El-Greg also advertised its Veggie Pizza Pie product on its Facebook page as a "Veggie Pizza Puff." *Id. at 127:7 – 130:2*. The jury appropriately found such acts, as well as the sale of "PIZZA PIE (PUFFS)" to constitute willful unfair competition because it was likely to confuse consumers in view of ILTACO's family of "puffs" marks. *Dkt. 188*.

The jury's finding of willful trade dress infringement and willful false advertising based on El-Greg's label and slogan thereon was also supported by an abundance of evidence. ILTACO's label, the overall appearance of which formed the basis of its trade dress, was seen by both Greg Lereno and Maria Lereno prior to El-Greg designing its label. *Ex. A, Tr. Trans. 121:2-9; 282:4-9*. Maria Lereno even testified that she provided her design company with a copy of ILTACO's label, which included ILTACO's slogan "Makers of the Original Pizza Puffs." *Id. at 285:17 – 286:24*. Greg Lereno also admitted they knew El-Greg was not the first to make a product like ILTACO's PIZZA PUFFS, because he set out to copy ILTACO's product. *Id. at 110:22 – 111:9*. Maria Lereno also admitted that ILTACO was the original maker of a stuffed sandwich product with "Puffs" in the name. *Id. at 295:1-8*. Despite this, Maria Lereno made the

3

decision to put the slogan "Makers of the Original Puffs" on El-Greg's label. *Id. at 294:23-25*. Ms. Lereno also approved the final version of the label with a confusingly similar overall appearance to ILTACO's label, and with the false claim in the slogan. *Id. at 290:13-16*.

Any of the jury's determinations of willful trademark infringement, willful trade dress infringement, willful unfair competition, or false advertising is sufficient, by itself, to have this case deemed exceptional. *Badger*, 13 F.3d at 1158. In this case, El-Greg was found by the jury to have willfully violated four provisions of the Lanham Act. As such, this Court should declare this case exceptional under 15 U.S.C. § 1117(a).

## II. El-Greg's Egregious Conduct During This Case Warrants A Declaration That The Case Is Exceptional

An additional basis for declaring this case exceptional, independent from the four findings of willfulness, is found in El-Greg's egregious litigation conduct. See *TE-TA-MA*, 392 F.3d at 263. It can be enough to support a finding of an exceptional case where the non-prevailing party's case was "objectively unreasonable." *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958, 965 (7th Cir. 2010). In patent cases, "[i]t is well-established that litigation misconduct and unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285." *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003) (citation omitted). "Litigation misconduct typically involves unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings." *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 919 (Fed. Cir. 2012) (citation and internal quotation marks omitted). El-Greg's egregious litigation misconduct is plain.

Since the very beginning, El-Greg took the position that ILTACO's PIZZA PUFFS mark was invalid as generic. *Dkt. 39, p. 19*. This assertion was the primary leverage exerted by El-Greg. Yet, El-Greg utterly failed to even overcome its burden of production on its defense. *Dkt.*

*178*. El-Greg did not conduct any survey or engage any expert witness to support its genericness claim. Instead, El-Greg sought to heap a pile of internet documents on the jury in hopes that the sheer volume would be enough.[2] El-Greg even failed to present any witness that could testify about the content of these documents. When directed to provide its best evidence and arguments in a proffer prior to trial, El-Greg could not muster even a plausible defense. *Dkt. 178*.

El-Greg's egregious litigation behavior is further demonstrated by its concealment of highly relevant evidence relevant to damages. The Lanham Act provides that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *15 U.S.C. § 1117(a)*. Despite its burden to prove costs or deductions, El-Greg withheld its spreadsheets that purportedly detailed its costs of goods sold. When pressed during her cross examination about the lack of evidence showing El-Greg's costs associated with the accused products, Maria Lereno identified for the very first time the existence of spreadsheets that she said itemized such costs. *Id. at 351:14 – 353:1*. Yet, during Ms. Lereno's deposition, she was specifically asked whether the financial documents that she had provided, which included no costs of goods sold, were the best accounting records for El-Greg's sales, and she falsely stated that they were despite undoubtedly having knowledge of other withheld spreadsheets. *Exhibit C, M. Lereno Dep. Trans. 175:10 – 177:10*. Amazingly, El-Greg's counsel then attempted to misrepresent the clear testimony that El-Greg still possessed the withheld documents during his closing argument. *Ex. A, Tr. Trans. 721:9-15*. This misrepresentation was made even after the court had stated that it was clear from the testimony that El-Greg still had the spreadsheets. *Id. at 476:4 – 478:20*.

El-Greg's egregious litigation conduct went even further with El-Greg's counsel's attempt to color the jury by introducing the idea that El-Greg would go out of business if

---

[2] El-Greg submitted the same exhibits, nearly 800, in its motion for summary judgment. *Dkt. 70*.

5

ILTACO's requested monetary amount was awarded. *Id. at 339:9 – 340:17*. Specifically, El-Greg's counsel asked Ms. Lereno: "Now, you've heard some testimony in this case from ILTACO and Mr. Polash in which they're saying that they are seeking to collect from El-Greg all of the sales that El-Greg has made to Restaurant Depot during 2010 to 2016, totaling $1.2 million. What effect would that have on your business?" *Id. at 339:9-14*. The Court took great issue with this tactic and stated that it believed such actions were intentional. *Id. at 339:19-22*. That El-Greg's grossly improper question influenced the jury is clear. Relevant to this motion, however, it is a clear example of egregious behavior, and warrants, by itself, a declaration that this case is exceptional.

### III. El-Greg's Counsel's Deliberate Actions Are Sanctionable

"A court may impose sanctions under 28 U.S.C. § 1927, against an attorney where that attorney has acted in an objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice, or where a claim is without a plausible legal or factual basis and lacking in justification." *Walter v. Fiorenzo*, 840 F. 2d 427, 433 (7th Cir. 1988) (internal quotations and citations omitted). In determining whether an attorney's actions were objectively unreasonable "a court may infer intent from a total lack of factual or legal basis for a suit." *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 227 (7th Cir.1984).

El-Greg's counsel engaged in a serious and studied disregard for the orderly process of justice by way of his attempt to claim poverty of the client. In particular, during trial El-Greg's counsel asked:

> Q. Now, you've heard some testimony in this case from ILTACO and Mr. Polash in which they're saying that they are seeking to collect from El-Greg all of the sales that El-Greg has made to Restaurant Depot during 2010 to 2016, totaling $1.2 million. What effect would that have on your business?

*Ex. A, Tr. Trans. 339:9 – 340:17.* After sustaining an objection, the Court, at sidebar stated:

> That is just so far outside the bounds of what is even conceivably appropriate that I'm just stunned. I am just stunned. And it seems to me that it's a deliberate attempt to claim poverty.
>
> ***
>
> Now, I'm going to now instruct the jury that the financial condition of either party doesn't have any bearing on any issue, and they're not permitted to consider it, and I'm telling the [plaintiff] if they want to ask for a mistrial, I will seriously consider granting it and awarding attorneys' fees because I think you've done this deliberately.

*Id. at 339:19 – 340:17*. A reasonably careful attorney would have known such conduct was objectively unreasonable. As such, sanctions are appropriate. *In Re TCI, Ltd.*, 769 F.2d 441, 445 (7th Cir.1985).

Similarly, El-Greg's persistence in its genericness defense is also sanctionable. The paucity of admissible or relevant evidence in support of El-Greg's genericness defense was raised at several times, including on summary judgment, in a motion *in limine*, and at the court's insistence of a proffer. Most importantly, as part of the proffer, El-Greg was ordered to put forth its best case, including case law and evidence. Despite having years to develop its defense, the court determined that El-Greg's best case was "insufficient to carry El-Greg's burden of production that would bring the issue of genericness into play." *Dkt 178 at 5*. Indeed, the Court characterized El-Greg's evidence as "lack[ing] foundation," "had precious little probative value," of "miniscule probative value," and "irrelevant and inadmissible." *Id. at 3-5*. For this additional reason, a sanction of attorney fees should be granted.

## IV. Conclusion

For the foregoing reasons, this Court should grant the instant motion and declare this case exceptional under 15 U.S.C. § 1117(a). This Court should also award ILTACO its reasonable attorney fees expended in this case, which are summarized in Exhibit D and which are detailed in Exhibit E, to be filed under seal.[3]

Dated: December 19, 2018                    Respectfully submitted,

                                            s/ Joseph M. Kuo
                                            Joseph M. Kuo – ARDC No. 6216400
                                            Eugene J. Geekie, Jr.– ARDC No. 6195060
                                            Kevin H. Morse – ARDC No. 6297244
                                            Kellie Y. Chen – ARDC No. 6320432
                                            SAUL EWING ARNSTEIN & LEHR LLP
                                            161 N. Clark St, Suite 4200
                                            Chicago, IL  60601
                                            Telephone:   (312) 876-7100
                                            Facsimile:   (312) 876-0288

                                            *Counsel for Plaintiff*
                                            *Illinois Tamale Co.*

---

[3] This amount is as of November 30, 2018, but will increase for services rendered with respect to post-trial activities.

## CERTIFICATE OF SERVICE

    I hereby certify that on December 19, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, and thereby caused it to be served on all counsel of record registered to receive such service.

                                                                      /s/ Joseph M. Kuo