IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS TAMALE CO., <br>     an Illinois corporation, <br><br>                              Plaintiff, <br> v. <br><br> EL-GREG, INC., <br>     an Illinois corporation, <br><br>                              Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No.: 1:16-cv-05387 <br><br> Judge Matthew F. Kennelly <br><br> Magistrate Judge Susan E. Cox |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION
FOR JUDGMENT NOTWITHSTANDING THE VERDICT, FOR
A NEW TRIAL, OR TO ALTER OR AMEND THE JUDGMENT**

      The jury found that Defendant, El-Greg, Inc. ("El-Greg") was a willful infringer of the intellectual property of Illinois Tamale Co. ("ILTACO"). By selling its copycat stuffed sandwich product with the name PIZZA PIE (PUFFS), El-Greg willfully infringed ILTACO's decades-old PIZZA PUFFS trademark. *Dkt. #202*. Rather than simply misleadingly imitate ILTACO's trademark, the jury further found that El-Greg had also intentionally and willfully imitated ILTACO's product label in the only outlet where the products were displayed side-by-side. *Id*. Furthermore, the jury determined that ILTACO also had a family of marks with the common element "puff" or "puffs" (the "Puffs Family") and that El-Greg's marketing of similar products such as PIZZA PIE (PUFFS) and Veggie Pizza Puffs was willful unfair competition. *Id*. Lastly, the jury found that El-Greg had also willfully adopted a false or misleading slogan, namely, "Makers of the Original Puffs." *Id*.

      To compensate ILTACO for El-Greg's willful violations of the Lanham Act, 15 U.S.C. § 1117(a) provides that a plaintiff "shall be entitled" to recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." The statute further provides

that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.*

The evidence related to El-Greg's revenues from its infringing sales was not disputed; the revenues totaled $1,282,841 from 2010 through the end of 2016, and totaled $187,152 from the date of the lawsuit to the end of 2016. While the elements of cost or deduction (COGS) were disputed, even El-Greg's expert and counsel agreed that *at a minimum*, El-Greg's profits were approximately $504,000 for the longer time period and $72,000 for the shorter time period. Yet, the jury awarded profits of $60,000 for July 2010 to December 31, 2016; and $30,000 for May 19, 2016 to December 31, 2016. Even when viewing the evidence in the light most favorable to El-Greg, the amount awarded is not supported by the evidence. The Lanham Act provides for correction of such an error by the jury by providing that "[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. § 1117.

The recovery awarded by the jury based on profits is wholly inadequate to compensate for El-Greg's multiple willful infringing acts. Accordingly, ILTACO respectfully requests that this Court enter a judgment notwithstanding the verdict (JNOV) and award an amount supported by the evidence in an amount no less than $504,000 for the longer time period and $72,000 for the shorter time period. Alternatively, ILTACO respectfully requests that the Court grant a new trial on the issue of the recovery for El-Greg's willful infringement.

Separate, although related to the quantum of the recovery, ILTACO respectfully submits that the Court erred in its determination that laches should apply in this case such that ILTACO's

2

recovery is limited to sales made during the shorter time period, and respectfully requests reconsideration of the order limiting recovery to the shorter time period.

## I. RELEVANT LEGAL STANDARD

A motion for a judgment notwithstanding the verdict is analyzed under Federal Rule of Civil Procedure 50. "The standard for determining whether a j.n.o.v. should be granted is whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." *Tapia v. City of Greenwood*, 965 F.2d 336, 338 (7th Cir. 1992). A court looks to see whether a reasonable jury would have "a legally sufficient evidentiary basis to find for the party on that issue." Fed.R.Civ.P. 50(a)(1); *Lawson v. Sun Microsystems, Inc.*, 791 F.3d 754, 761 (7th Cir. 2015).

Alternatively, the court may grant a new trial on all or some of the issues pursuant to Federal Rule of Civil Procedure 59. "A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Glickenhaus & Co. v. Household Intern., Inc.*, 787 F.3d 408, 414 (7th Cir. 2015); see also *Higdon v. Entenmann's Sales Co.*, No. 01 C 6972, 2002 WL 1821666, at *1 (N.D. Ill. Aug. 8, 2002) ("[A] Rule 59 motion for a new trial should be granted if the jury's verdict was against the weight of the evidence, the damages were excessive, or the trial was unfair.").

Furthermore, Rule 59(e), which allows parties to move for an altered or amended judgment, provides district courts the "opportunity to correct errors that may have crept into the proceeding, before the case leaves the district court for good." *Sosebee v. Astrue,* 494 F.3d 583, 589 (7th Cir. 2007). Courts should grant a Rule 59(e) motion if "the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence

3

in the record that clearly establishes a manifest error of law or fact." *In re Prince,* 85 F.3d 314, 324 (7th Cir. 1996); *see also Obriecht v. Raemisch,* 517 F.3d 489, 494 (7th Cir. 2008). "Manifest error" means "the wholesale disregard, misapplication, or failure to recognize controlling precedent," not simply disappointment of the losing party. *Oto v. Metropolitan Life Ins.*, 224 F.3d 601, 606 (7th Cir. 2000). The party moving for reconsideration bears the burden of establishing that the court should reverse its prior judgment. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

## II. The Court Should Grant ILTACO's Motion for JNOV Because There is No Legally Sufficient Basis for the Jury's Profit Numbers

When there is a determination of willful infringement of a registered trademark, such as ILTACO's PIZZA PUFFS mark, or a determination of a willful violation of 15 U.S.C. § 1125(a), which includes provisions for trade dress infringement, unfair competition, and false advertising, the statute provides that "the plaintiff *shall be entitled*" to recover "(1) defendant's profits; (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a) (emphasis supplied). In this manner, the victim of infringement is assured compensation for its losses and the defendant is also deprived of any benefit it unjustly reaped. *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1157 (7th Cir. 1994). "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a); *see also Roulo v. Russ Berrie & Co., Inc.,* 886 F.2d 931, 940-41 (7th Cir. 1989) ("the plaintiff is required to present proof of the infringer's gross revenues, with the burden on the infringer to establish any deductions for expenses . . . ."). Here, El-Greg was found to have breached an earlier settlement agreement and willfully infringed ILTACO's registered trademark. Not stopping there, El-Greg also willfully infringed ILTACO's trade dress by slavishly copying ILTACO's label, willfully infringed ILTACO's "Puffs Family" of marks,

4

and willfully made the false claim that it was the "Makers of the Original Puffs." Yet, the jury's profits numbers of $60,000 for July 2010 to December 31, 2016 or $30,000 for May 19, 2016 to December 31, 2016 fail to correlate to the monies El-Greg unjustly reaped.

ILTACO's financial expert, William Polash, calculated El-Greg's infringing sales to be $1,282,841 from 2010 through the end of 2016, and $187,152 from the date of the lawsuit to the end of 2016. *Ex. A, Tr. Trans.* at 210:23-211:14. El-Greg's financial expert agreed with these sales numbers. *Id.* at 217:11-24. However, she applied an estimate for the costs of goods to reduce the revenues and arrive at a profit number of approximately $504,000 from 2010 through 2016 and approximately $72,000 from the date of the lawsuit to the end of 2016.[1] *Id.* at 571:09-20. El-Greg even argued during closing that if profits were to be awarded, they should be "for the six-year period, a little over $504,000, and in the short period, it's about $72,000." *Id.* at 723:15-17. Thus, the jury was presented with evidence and arguments to support two options for each of the time periods. For the period from 2010 through the end of 2016, profits were either $1,282,841 or approximately $504,000. For the period from the date of the lawsuit to the end of 2016, profits were either $187,152 or approximately $72,000.

Despite this being the only evidence presented to the jury, the jury's verdict awarded the unsupported and arbitrary amounts of $60,000 for July 2010 to December 31, 2016 and $30,000 for May 19, 2016 to December 31, 2016. There is simply no evidence to support these numbers. As a matter of law, the jury's finding of willfulness on all of ILTACO's Lanham Act counts entitled ILTACO to El-Greg's profits. 15 U.S.C. § 1117(a). The only evidence presented to the jury on the amount of profits was a maximum of either $1,282,841 to a minimum of $504,000 (from 2010 through the end of 2016) or $187,152 to a minimum of $72,000 (from the date of the

---

[1] Because El-Greg did not provide any documentation of its COGS, Mr. Polash did not calculate COGS. *Ex. A. Tr. Trans.* at 227:04-17.

5

lawsuit to the end of 2016). Compensatory damages must rest on "a just and reasonable estimate of the damage based on relevant data." *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 506 (7th Cir. 1992). The jury's determination does not do so. Therefore, the Court should, pursuant to 15 U.S.C. § 1117(a) find that the amount of the recovery based on profits was inadequate, and award profits within the ranges discussed.[2]

### III. In the Alternative, the Court Should Grant a New Trial on the Profits Award Because the Jury's Award is against the Manifest Weight of the Evidence and was the Result of an Unfair Trial

In the alternative, this Court should grant a new trial on the awarded profits because no rational jury could have rendered the verdict that it did. As demonstrated in Part II, the jury's awarded profits amount is not rationally based on any evidence. There is simply no connection whatsoever between the profits awarded by the jury and the profits calculations by ILTACO and El-Greg. *See Moore ex rel. Estate of Grady v. Tuelja,* 546 F.3d 423, 427 (7th Cir. 2008).

The reason for the jury's incongruous profit numbers is evidently the result of El-Greg's litigation misconduct, which renders this portion of the trial unfair to ILTACO, and demonstrates the propriety of a new trial. See *Glickenhaus*, 787 F.3d at 414 ("A new trial is appropriate . . . if the trial was in some way unfair to the moving party"); s*ee also Higdon*, 2002 WL 1821666, at *1. El-Greg's litigation misconduct related to monetary recover is two-fold.

First, El-Greg admitted to withholding undeniably relevant evidence. It was El-Greg's burden to prove costs or deductions from sales revenues, yet El-Greg's Maria Lereno admitted to withholding spreadsheets that detailed its costs of goods sold. This revelation only came to pass during her cross examination when pressed about the lack of evidence showing El-Greg's costs

---

[2] ILTACO fully recognizes that the Court's laches determination would make the relevant figures those for the shorter time period. However, in that ILTACO respectfully submits that laches should not apply, ILTACO presents both sets of numbers for consideration.

6

associated with the accused products. Ms. Lereno admitted, for the very first time, to the existence of spreadsheets that itemized COGS. *Ex. A, Tr. Trans.* at 351:14 – 353:01. This was completely at odds with her deposition testimony that the financial documents she provided, which included no costs of goods sold, were the best accounting records for El-Greg's sales. *Ex. B., M. Dep. Trans.*, at 175:10 – 177:10. Recognizing that his client had concealed evidence, El-Greg's counsel attempted to misrepresent the clear testimony that El-Greg still possessed the withheld documents during his closing argument. *Ex. A, Tr. Trans.* at 721:09-15. This misrepresentation was made even after the Court had stated that it was clear from the testimony that El-Greg still had the spreadsheets. *Id*. at 476:04 – 478:20. To the extent that this Court grants a new trial, El-Greg should be precluded from now submitting the withheld spreadsheets, and should be precluded from arguing any deductions from revenues as a sanction for its discovery abuse.

Second, El-Greg prejudiced the jury. El-Greg's counsel intentionally sought to curry sympathy from the jury by introducing the idea that El-Greg would go out of business if the money ILTACO sought was awarded. *Ex. A, Tr. Trans.* at 339:09 – 340:17.

> Q. Now, you've heard some testimony in this case from ILTACO and Mr. Polash in which they're saying that they are seeking to collect from El-Greg all of the sales that El-Greg has made to Restaurant Depot during 2010 to 2016, totaling $1.2 million. What effect would that have on your business?

*Id.* After sustaining an objection, the Court, at sidebar stated:

> That is just so far outside the bounds of what is even conceivably appropriate that I'm just stunned. I am just stunned. And it seems to me that it's a deliberate attempt to claim poverty.
>                     \*\*\*
> Now, I'm going to now instruct the jury that the financial condition of either party doesn't have any bearing on any issue, and they're not permitted to consider it, and I'm telling the [plaintiff] if they want to ask for a mistrial, I will seriously consider granting it and awarding attorneys' fees because I think you've done this deliberately.

7

*Id.* Notwithstanding the instruction from the Court, El-Greg's grossly improper question clearly influenced the jury, as evidenced by the inexplicable disconnect between the findings of willful infringement and the profits and damages ultimately awarded. In fact, the low amount awarded by the jury, which was not argued by either party, can only be explained by El-Greg's prejudicial tactics. Accordingly, ILTACO is entitled to a new trial on the quantum of monetary recovery. *See, e.g., Allstate Ins. Co. v. St. Anthony's Spine & Joint Inst., P.C.*, No. 06-CV-7010, 2012 WL 669044, at *12–13 (N.D. Ill. Feb. 29, 2012), citing *Anderson v. City of Chicago*, No. 09 C 2311, 2011 WL 2292327, at *2 (N.D. Ill. June 9, 2011) ("[i]n order to obtain a new trial on attorney misconduct grounds, the moving party must show both that the misconduct occurred and that it prejudiced their case.").

### IV. The Court Should Alter or Amend the Judgment on El-Greg's Laches Defense

ILTACO respectfully submits that the Court erred in determining that El-Greg proved that laches were appropriate in this case. ILTACO requests, pursuant to Rule 59(e), that the Court's order of December 14, 2018 (*Dkt. #202*) be amended to find that El-Greg's laches defense is inapplicable under the circumstances in this case.

#### A. Unclean Hands Does Not Require Proof Of Actual Fraud

Laches depends upon a showing of an unreasonable lack of diligence by the party against whom the defense is asserted and prejudice arising from the lack of diligence. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 822 (7th Cir. 1999). Moreover, "[a] party's unclean hands may stand as an obstacle to the application of the doctrine of laches in certain circumstances. The notion of unclean hands working as a bar to the application of laches stems from the belief that an equitable doctrine, such as laches, cannot be used to reward a party's inequities or to defeat justice." *Id.* at 825. The Supreme Court, in *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*,

8

324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945), made clear that "he who comes into equity must come with clean hands. This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Id*. at 814. The unclean hands doctrine "necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant." *Id*. at 815. "*Any willful act concerning the cause of action* which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim . . . ." *Id*. (emphasis supplied).

Indeed, several appellate courts have held that willful trademark infringement acts as a bar to laches. According to the Second Circuit "intentional infringement is a dispositive, threshold inquiry that bars further consideration of the laches defense, not a mere factor to be weighed in balancing the equities, as the district court did in this case." *Hermes Intern. v. Lederer de Paris Fifth Ave.*, 219 F. 3d 104, 107 (2nd Cir. 2000). The Fifth Circuit stated that "[a] defendant who intentionally infringes a trademark with the bad faith intent to capitalize on the markholder's good will lacks the clean hands necessary to assert the equitable defense [of laches]." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013); quoting *Bd. of Supervisors for La. State v. Smack Apparel Co.*, 550 F.3d 465, 490 (5th Cir. 2008) (defendant's willful infringement precluded the defense of laches). The Ninth Circuit also held that a plaintiff may demonstrate the defendant has unclean hands by showing he or she willfully infringed on the plaintiff's mark. *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 956-57 (9th Cir. 2001).

Similarly, courts in the Seventh Circuit have indicated that proof of willful conduct may bar the equitable laches defense. In *Hot Wax*, the court held that an "affirmative showing . . . of some willful, egregious, *or* unconscionable conduct" may preclude the availability of the laches

9

defense. *Hot Wax*, 191 F.3d at 826; *see also Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, No. 12 C 9686, 2016 WL 723135, at *3 (N.D. Ill. Feb. 24, 2016) (finding that plaintiff established unclean hands for laches defense by showing that defendant was aware it was using trademarks intentionally and understood the trademarks belonged to plaintiff).

This Court stated that it "rejects Illinois Tamale's contention that El-Greg's willfulness constitutes unclean hands that precludes it from relying on a laches defense." *Dkt. #202*, at 5-6. The Court went on to say that ILTACO had to show "that El-Greg's conduct amounts to the type of 'actual fraud' directly bearing on the issue of laches" in order to bar reliance on the laches defense. *Id*. In support of this, the Court cited the *Hot Wax* case's discussion of *La Republique Française v. Saratoga Vichy Spring Co.*, 191 U.S. 427, 439 (1903). *Id*.

*Hot Wax* does state that "actual fraud" bars laches. However, the *Hot Wax* does not limit the circumstances that may constitute unclean hands to those of "actual fraud." Instead, as discussed above, the Seventh Circuit explicitly states that other types of conduct, such as "willful" conduct can constitute unclean hands . *Hot Wax*, 191 F.3d at 826. This is fully in line with the established Supreme Court precedent that "any willful act concerning the cause of action" constitutes unclean hands. It is also on all fours with the several circuits finding that willful or intentional trademark infringement establishes unclean hands barring the availability of the laches defense. In that willful conduct was found by the jury for each of the four Lanham Act counts, ILTACO respectfully submits that El-Greg's willful and intentional conduct constitutes unclean hands, and that laches is precluded.

B.     The Evidence Does Not Support Laches

In addition to El-Greg's unclean hands barring its laches defense, ILTACO respectfully submits that laches should not apply in this case from a factual perspective. Accordingly, ILTACO requests that this Court amend its order of December 14, 2018 (*Dkt. #202*).

"[L]aches is a question of degree." *Hot Wax,* 191 F.3d at 824, quoting *Smith v. City of Chicago*, 769 F.2d 408, 410 (7th Cir. 1985). "[I]f only a short period of time has elapsed since the accrual of the claim, the magnitude of prejudice require[d] before the suit should be barred is great, whereas if the delay is lengthy, prejudice is more likely to have occurred and less proof of prejudice will be required." *Id.*, quoting *Zelazny v. Lyng*, 853 F.2d 540, 543 (7th Cir.1988).

Here the delay is not lengthy, and is a far cry from the delay in *Hot Wax*. The Court counted the entire period between discovery of the infringing acts to the filing of the lawsuit as the relevant time period. While this time was greater than the three year statute of limitations under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10a(e), which the Court found to be the most analogous state statute, it was only modestly so.

ILTACO submits that *Hot Wax* demonstrates that the entire period should not have been considered a delay. "[A]ttempts to resolve a dispute without resorting to a court do not constitute unreasonable delay" for determining the applicability of the doctrine of laches. *Hot Wax*, 191 F.3d at 823, citing *Leonard v. United Airlines*, 972 F.2d 155, 158 (7th Cir. 1992). As such, the *Hot Wax* court only considered the time outside the period where Hot Wax had attempted to resolve the dispute outside of court. ILTACO sent El-Greg a cease and desist letter in August 2011. Mr. Adam Shabaz testified that ILTACO attempted to engage with El-Greg for over a year during 2011 and 2012. *Ex. A, Tr. Trans.* at 489:15-490:04. Thus, the relevant time period of the

11

supposed delay was from after 2012 to the sending of the second cease and desist in December 2015. This time is, at best, only slightly longer than the three year statute of limitations.[3]

Given the much shorter time period than was present in *Hot Wax*, El-Greg must prove great harm. The evidence does not support such great harm. The Court determined that El-Greg's prejudice was found because it was deprived of the opportunity to cut off damages at an earlier date, and cited *Hot Wax* in support. *Dkt. #202*, at 5.

ILTACO first respectfully submits that *Hot Wax* is factually distinguishable. In *Hot Wax*, the plaintiff permitted the defendant's infringement to go unchecked for a ten to twenty-year period, while the plaintiff "sat idly by and chose not to challenge the defendant's infringing use." *Hot Wax,* 191 F.3d at 824. Unlike El-Greg, Turtle Wax "invested significant amounts of time and money in product development and advertising" to exploit a market position. *Id*. Moreover, Hot Wax even "attempted to break into the same market with the development of similar products that it also referred to as 'wax,' even though these products had many of the same properties and characteristics as the Turtle Wax products at issue." *Id*. The *Hot Wax* court held that "in light of the extreme length of the unreasonable delay by Hot Wax, we conclude that the district court did not err in concluding that Turtle Wax was prejudiced by this delay." *Id*. In this case, by contrast, there is no evidence that El-Greg invested significant time or money in product development or advertising.

*Hot Wax* also does not state that the simple loss of an opportunity to cut off damages constituted the necessary prejudice. *Id*. Instead, the *Hot Wax* court stated that if Hot Wax had

---

[3] Further, unlike in *Hot Wax*, ILTACO did not sit idly by. Instead, Mr. Shabaz testified that ILTACO attempted to speak to Restaurant Depot about the infringing labels, contacted the Illinois State Attorney General, and ILTACO's complaint and grievance was forwarded to the Internal Revenue Service. *Ex. A, Tr. Trans.* at 487:20-489:14. Such attempts demonstrate the reasonableness of the delay on ILTACO's part.

brought suit sooner, Turtle Wax "could have invested its time and money in other areas or simply renamed its products." *Id*. Again, Hot Wax illustrates the principle that prejudice for the purposes of laches requires that "a defendant *has changed his position* in a way that would not have occurred if the plaintiff had not delayed." *Id*. (emphasis supplied). There is no evidence that El-Greg changed its position at all. Instead, it continued as it always had with its infringing acts.

Moreover, the Federal Circuit case *AC Aukerman Co. v. RL Chaides Const. Co.*, 960 F.2d 1020, 1033 (Fed.Cir. 1992), which is relied upon by the Seventh Circuit in *Hot Wax*, indicates that merely incurring additional damages is not prejudice in the context of laches. The court held, while a defendant may incur damages that would have been prevented by earlier suit, that such economic prejudice would then arise in every suit, and therefore, "[t]he courts *must look for a change in the economic position* of the alleged infringer during the period of delay." 960 F.2d at 1033 (emphasis supplied). Put more simply, economic prejudice "limited to the amount of [defendant's] infringement liability . . . is not sufficient to support the laches defense." *State Contracting & Eng. v. Condotte America*, 346 F.3d 1057, 1066 (Fed.Cir. 2003).

Accordingly, ILTACO requests that this Court amend its order of December 14, 2018 (*Dkt. #202*) to find that laches is inapplicable in this case.

## CONCLUSION

For the foregoing reasons, ILTACO respectful submits this Court should grant ILTACO's motion for judgment notwithstanding the verdict on the award of profits, or grant ILTACO's motion for a new trial in the alternative. Additionally, ILTACO requests that this Court grant ILTACO's motion for an altered or amended judgment on El-Greg's laches defense for the reasons stated above.

Dated: January 11, 2019　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　s/ Joseph M. Kuo
　　　　　　　　　　　　　　　　　　　　Joseph M. Kuo – ARDC No. 6216400
　　　　　　　　　　　　　　　　　　　　Eugene J. Geekie, Jr.– ARDC No. 6195060
　　　　　　　　　　　　　　　　　　　　Kevin H. Morse – ARDC No. 6297244
　　　　　　　　　　　　　　　　　　　　Kellie Y. Chen – ARDC No. 6320432
　　　　　　　　　　　　　　　　　　　　SAUL EWING ARNSTEIN & LEHR LLP
　　　　　　　　　　　　　　　　　　　　161 N. Clark St, Suite 4200
　　　　　　　　　　　　　　　　　　　　Chicago, IL  60601
　　　　　　　　　　　　　　　　　　　　Telephone:   (312) 876-7100
　　　　　　　　　　　　　　　　　　　　Facsimile:   (312) 876-0288
　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff*
　　　　　　　　　　　　　　　　　　　　*Illinois Tamale Co.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, and thereby caused it to be served on all counsel of record registered to receive such service.

/s/ Joseph M. Kuo